**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RALPH SCHNEIDER,
            *Petitioner-Appellant,*

v.

E. K. McDANIEL; ATTORNEY
GENERAL OF THE STATE OF NEVADA,
            *Respondents-Appellees.*

No. 09-16945

D.C. No.
3:06-cv-00449-
KJD-RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted
January 9, 2012—San Francisco, California

Filed April 4, 2012

Before: J. Clifford Wallace, John T. Noonan, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Wallace;
Partial Concurrence and Partial Dissent by Judge Noonan

## COUNSEL

Franny A. Forsman, Federal Public Defender, and Paul G. Turner, Assistant Federal Public Defender, Las Vegas, Nevada, for the petitioner-appellant.

Daniel M. Roche, Deputy Attorney General, Carson City, Nevada, for the respondents-appellees.

## OPINION

WALLACE, Senior Circuit Judge:

Petitioner-Appellant Ralph Schneider seeks review pursuant to a certificate of appealability of the denial of his petition for a writ of habeas corpus. Schneider petitioned for habeas corpus in the United States District Court for the District of Nevada under 28 U.S.C. § 2254. His First Amended Petition stated eight grounds for relief. The district court denied the petition entirely, but granted a certificate of appealability on the following issues: (1) the rejection of Ground 1 on the merits; (2) the holding that Grounds 3, 4, 5, and 6 of the amended petition do not relate back to the original petition; and (3) the holding that petitioner's mental condition did not excuse his

procedural default on Grounds 2 and 7. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. Schneider also asks us to consider whether the district court erred in refusing to hold an evidentiary hearing on Ground 1. We decline to expand the certificate of appealability and we affirm.

**I.**

On December 12, 1996, a jury in Nevada state court found Schneider guilty of robbery with a deadly weapon, false imprisonment, battery with a deadly weapon, and battery causing substantial bodily harm. Schneider and his girlfriend, Lisa Dehmer, had attacked and robbed Randy Krotz in Krotz's apartment on August 12, 1996. According to Krotz, Schneider and Dehmer came to Krotz's apartment that day to see if he wanted to buy drugs. Krotz paid Schneider fifteen dollars for methamphetamine and injected the drug. Dehmer then grabbed Krotz's fanny pack to look for more money, bit him on the nose, and hit him. Schneider ordered Krotz to the floor and, with Dehmer's help, tied Krotz's hands and feet and gagged him. Schneider held a knife against Krotz's body as Dehmer went through the apartment, presumably looking for money. Krotz testified that over a period of approximately two hours Schneider and Dehmer stabbed him, cut him, hit him with the butt end of the knife, kicked him, cut his hair, poured pickle juice in his wounds, and broke a jar over his head. Eventually, Schneider and Dehmer left the apartment with the money they had found and some of Krotz's personal property, leaving him bound and gagged. Krotz managed to free his feet and got help from a neighbor.

The state tried Schneider and Dehmer together. Immediately prior to trial, both Dehmer and Schneider moved to sever their trials. In his motion, Schneider argued that he would suffer prejudice by being tried with Dehmer because she planned to offer a coercion defense that would involve evidence that Schneider beat Dehmer and that he was part of the Aryan Brotherhood. The trial judge denied the motions.

At trial, Dehmer introduced evidence that Schneider had beaten her and, on two occasions, mentioned Schneider's affiliation with the Aryan Warriors or Aryan Brotherhood. On the first occasion, Dehmer testified that she could not escape from Schneider because she would have been labeled a snitch, and that Aryan Warriors kill snitches. Schneider did not object to this testimony. Later, while cross-examining Dehmer, Schneider's attorney suggested that Dehmer's belief that Schneider had his friends watching her was the result of a heroin-induced psychosis. Dehmer responded, "It's a little circle of Aryan Brotherhood." Schneider requested that the comment be stricken. The trial judge agreed that the comment was non-responsive, struck it from the record, and admonished the jury to disregard it.

Schneider did not testify. However, he did offer evidence that Dehmer was abusive toward him and that he was afraid of her. Schneider was ultimately convicted on four counts and Dehmer was convicted on three.

Schneider appealed his conviction without success. The Nevada Supreme Court dismissed his appeal on June 6, 1997. The time to petition for certiorari to the United States Supreme Court expired on September 4, 1997.

Schneider did not pursue further relief until November 20, 2005, when he mailed a pro se petition for a writ of habeas corpus to the Nevada state court. This petition was denied on February 7, 2006. His appeal of the state trial court's denial was denied on July 10, 2006.

After receiving no relief in the state courts, Schneider mailed a pro se petition for a writ of habeas corpus to the United States District Court for the District of Nevada on August 14, 2006. The district court appointed counsel for Schneider, and Schneider filed a First Amended Petition on November 2, 2007.

On October 23, 2008, the district court granted in part and denied in part a motion to dismiss the First Amended Petition. In its order, the district court held that Schneider's original petition was timely because Schneider was entitled to equitable tolling of the Anti-Terrorism and Effective Death Penalty Act's (AEDPA) one-year statute of limitations for the time period of September 4, 1997, through November 20, 2005. The district court concluded that Schneider's "mental health conditions constituted extraordinary circumstances standing in the way of his filing a timely federal petition, such that he likely would have been unable to file a timely federal petition due to those circumstances." Findings of Fact, Conclusions of Law, and Order at 4 (Oct. 23, 2008). Nevertheless, the district court held that Grounds 3, 4, 5, and 6 of the amended petition were untimely because they did not relate back to the original petition, and were, therefore, filed outside the limitations period. The district court also held that, while timely, Grounds 2 and 7 of the amended petition were barred by Schneider's procedural default. That is, while Schneider's mental health condition could excuse his failure to file a *federal* petition within AEDPA's one-year limitations period, it did not constitute cause to excuse his failure to comply with *state* procedures. On July 9, 2009, the district court denied Ground 1 of Schneider's amended petition on the merits.

## II.

We review the denial of a petition for writ of habeas corpus brought under 28 U.S.C. § 2254 de novo. *Collier v. Bayer*, 408 F.3d 1279, 1281 (9th Cir. 2005). But "[t]o the extent it is necessary to review findings of fact made in the district court, the clearly erroneous standard applies." *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002). We also review de novo the district court's application of the relation-back doctrine under Federal Rule of Civil Procedure 15(c). *Williams v. Boeing Co.*, 517 F.3d 1120, 1132 (9th Cir. 2008).

## A.

Schneider first argues that the district court erred in denying Ground 1 of his First Amended Petition. In Ground 1, Schneider asserted that, "[t]he trial court's denial of the motion for mistrial based on Lisa Dehmer's Aryan Brotherhood testimony denied Schneider his First and Fourteenth Amendment rights to freedom of association and to due process of law and fair trial." First Am. Pet. at 7 (Nov. 2, 2007). He argues that the state court's adjudication of the claim resulted in an unreasonable application of clearly established federal law as determined by the United States Supreme Court in *Dawson v. Delaware*, 503 U.S. 159 (1992).

The Supreme Court of Nevada rejected Schneider's direct appeal on the following grounds:

> We conclude that no error requiring a mistrial occurred here. First, the state did not elicit the disputed evidence or employ it in any way. Second, the evidence consisted only of two short remarks by the codefendant, referring to the Aryan Warriors and the Aryan Brotherhood. The first was not even objected to and the district court immediately admonished the jury to disregard the second. We conclude that these remarks did not prejudice appellant. Therefore, no grounds for a mistrial existed, and the court did not err in denying the motion.

*Schneider v. State*, No. 30037, Slip Op. at 2-3 (Nev. June 6, 1997). Our task is to determine whether this decision involves an unreasonable application of *Dawson*.

The state court's first rationale for rejecting Schneider's *Dawson* argument was that "the state did not elicit the disputed evidence or employ it in any way." *Id.* Slip Op. at 2. We interpret this rationale as distinguishing *Dawson* on the ground that the evidence was offered by a co-defendant as

part of that co-defendant's defense rather than offered by the prosecution.

Schneider disagrees, arguing that "[w]hether it was the state or co-defendant who elicited the testimony does not negate the fact that the jury was told that Schneider belonged to a violent group 'holding racist or other antisocial beliefs,' " Pet. Br. at 23 (quoting *Flanagan v. State*, 846 P.2d 1053, 1056 (Nev. 1993)). But Schneider cites no authority for his proposition that the Nevada Supreme Court's distinction of *Dawson* is invalid.

**[1]** We recognize that, from the jury's perspective, evidence of a defendant's reprehensible abstract beliefs may be just as prejudicial whether it is offered by a co-defendant or by the prosecutor. Nevertheless, the United States Supreme Court dealt with a particular set of facts in *Dawson*, and its holding was narrow. *Dawson* held only that the First Amendment "prevents [the state] from employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried." 503 U.S. at 168. This holding obviously affects any state government. But, there may well be good reasons for distinguishing between the state and a co-defendant, at least where, as here, the evidence is relevant to the co-defendant's defense. *Dawson* did not address this question and it does not obviously require a contrary result. Were we to address the issue whether *Dawson* extends to evidence presented by a co-defendant, we might or might not come to a different conclusion than the Nevada Supreme Court. But *Dawson* does not compel such a result. At the very least, " 'fairminded jurists could disagree' on the correctness of the state court's decision," *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), and, therefore, the state court's determination precludes federal habeas relief.

**[2]** Even if we were to conclude that this distinction by the Nevada Supreme Court was unreasonable, we are not con-

vinced that the principle in *Dawson* applies in Schneider's situation. Dehmer's references to Schneider's affiliation with the Aryan Brotherhood were not offered to prove Schneider's beliefs so that "the jury would find these beliefs morally reprehensible." *Dawson*, 503 U.S. at 167. Rather, Dehmer's comments were offered to prove that she had a reasonable basis to fear Schneider because she believed the Aryan Brotherhood would kill her if they considered her a snitch and because she believed Schneider had his friends in the Aryan Brotherhood watching her. The evidence was offered to prove the practices of the Aryan Brotherhood, not its beliefs. In *Dawson*, the Supreme Court expressly recognized that the case would be different if the evidence proved something more than Dawson's abstract beliefs. *Id.*

Second, the Nevada Supreme Court reasoned that no error requiring a mistrial occurred because the evidence consisted of only two short remarks that did not prejudice the appellant. We interpret this rationale as a conclusion by the Nevada Supreme Court that any error in admitting the evidence was harmless.

In deciding whether an error was harmless, we ask whether the alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), *quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946); *see also Merolillo v. Yates*, 663 F.3d 444, 454-55 (9th Cir. 2011).

**[3]** Even assuming that the admission of Dehmer's testimony was error, it was harmless under *Brecht*. The government offered significant direct evidence of Schneider's guilt. Schneider does not argue that he presented anything to controvert the state's evidence. Instead, his defense was that he performed the acts he was accused of under duress by Dehmer. On this record, we conclude that Dehmer's passing references to the Aryan Brotherhood or Aryan Warriors did not

influence the jury to give greater credence to the government's evidence or to reject Schneider's defense.

**[4]** In sum, the Nevada Supreme Court's determination that the trial court did not abuse its discretion in refusing to declare a mistrial is not inconsistent with *Dawson*. Even if there were an error, that error would be harmless. Therefore, we affirm the district court's denial of Schneider's petition as to Ground 1.

## B.

Schneider next contends that the district court erred in holding that Grounds 3, 4, 5, and 6 of the First Amended Petition do not relate back to the original petition.

**[5]** Claims brought in an amended petition for a writ of habeas corpus relate back to the original petition if they arise out of "a common 'core of operative facts' uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005). "An amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. The district court found that Grounds 3, 4, 5, and 6 of Schneider's amended petition did not share a common core of operative facts with the grounds asserted in the original petition.

## 1.

Ground 3 of the amended petition alleges that the trial court's denial of Schneider's motion to sever the trial rendered his trial fundamentally unfair and denied him due process of law under the Fourteenth Amendment. Schneider contends that this claim shares a common core of operative facts with Ground 1(3) of the original petition. In that ground, Schneider alleged that his trial counsel provided ineffective assistance by failing to investigate Dehmer's trial strategy.

According to the original petition, had Schneider's trial counsel performed this investigation, he could have prevented the prejudice caused by Dehmer's defense by filing a timely pretrial motion to sever and to suppress Dehmer's testimony.

**[6]** These two claims do not arise out of a common core of operative facts. The facts underlying the original claim were: (1) trial counsel failed to investigate Dehmer's trial strategy, (2) trial counsel failed to file a timely motion to sever, (3) trial counsel failed to file a timely motion to suppress testimony by Dehmer, and (4) Dehmer testified at Schneider's trial. The facts underlying the amended claim are different: (1) trial counsel brought a motion to sever on the second day of trial, (2) the trial court denied the motion, and (3) Dehmer testified at Schneider's trial. While both theories share one fact: that Dehmer testified at Schneider's trial, this is not sufficient to conclude that they arise out of a common *core* of operative facts. Schneider's original theory was based on trial counsel's alleged failures. His amended theory is based on the trial court's alleged errors. The core facts underlying the second theory are different in type from the core facts underlying the first theory. *See Mayle*, 545 U.S. at 650. Therefore, relation back is not appropriate.

**2.**

Ground 4 of the amended petition alleges that Schneider received ineffective assistance from his appellate counsel because appellate counsel failed to argue that his convictions on Count III and Count IV were mutually exclusive and/or redundant. He argues that amended Ground 4 arises out of the same core of operative facts as Ground 2 of the original petition. Schneider alleged ineffective assistance of appellate counsel in Ground 2 of the original petition by identifying a number of specific issues that appellate counsel failed to raise on direct review. Also, Schneider purported to base his original ineffective assistance claim on "additional grounds that

will be found once an attorney is appointed for petitioner." Petition at 8 (Aug. 14, 2006).

**[7]** The district court recognized the import Schneider's argument would have on the relation back doctrine in general. It reasoned,

> In truth, petitioner is arguing that the assertion of any claim of ineffective assistance of appellate counsel based upon the failure to raise an issue or issues on direct appeal thereafter supports the relation back of any and every claim of ineffective assistance of appellate counsel that petitioner thereafter may decide to raise. A holding that relation back is available in that circumstance would stand the Supreme Court's decision in *Mayle* on its head.

Findings of Fact, Conclusions of Law, and Order at 23-24 (Oct. 23, 2008). We agree with the district court that Schneider's argument would eviscerate *Mayle* with respect to claims of ineffective assistance of appellate counsel. Because Schneider's amended Ground 4 does not share any facts with any of the ineffective assistance claims raised in original Ground 2, the district court properly dismissed Ground 4 as untimely.

**3.**

In Ground 5 of the amended petition, Schneider alleges that he received ineffective assistance from his trial counsel because his lawyer failed to interview potential witnesses and failed to take pictures of the damage to his parents' house caused by Dehmer in her fits of rage. Schneider argues that this ground arises out of the same core of operative facts as Ground 1(3) of the original petition. As explained above, that ground alleged that trial counsel provided ineffective assistance by failing to investigate Dehmer's defense strategy.

**[8]** We agree with the district court that Ground 5 does not relate back. Ground 5 is based on trial counsel's failures to

prepare *Schneider's* defense whereas Ground 1(3) is based on trial counsel's failure to investigate *Dehmer's* defense. The two claims have no facts in common.

**4.**

Finally, Schneider alleges that the district court erred in holding that Ground 6 of the amended petition did not share a common core of operative facts with Ground 1(1) of the original petition. In amended Ground 6, Schneider asserts that he was denied effective assistance of counsel because his trial counsel failed to develop a voluntary intoxication defense to the battery charges. Original Ground 1(1) also alleged ineffective assistance, but it was based on trial counsel's failure to have Schneider evaluated by a psychiatrist to determine his competency to stand trial or to establish a defense of inability to know right from wrong due to manic depression and schizophrenia.

**[9]** We agree with the district court that Ground 6 does not relate back. Inability to know right from wrong is a completely different defense from voluntary intoxication. Presenting a claim that trial counsel rendered ineffective assistance because he failed to establish a particular defense cannot preserve for the petitioner any claim of ineffective assistance based on failure to establish a defense that the petitioner might later discover. Such a holding would, as the district court put it, stand *Mayle* on its head. Furthermore, whether Schneider could have presented a voluntary intoxication defense has nothing to do with the question of whether he was competent to stand trial. Amended Ground 6 and original Ground 1(1) do not arise out of a common core of operative facts.

**C.**

The district court held that Grounds 2 and 7 of Schneider's amended petition were timely and properly exhausted. How-

ever, it dismissed these claims without reaching their merits because of Schneider's procedural default. Schneider asserts that his procedural default should be excused because his mental illness prevented him from complying with the state procedures.

**[10]** In *Coleman v. Thompson*, the Supreme Court held that a state prisoner's failure to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in the federal court by the adequate and independent state ground doctrine. 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance"); *see also id.* at 732 ("The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases"). Where a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Unless the prisoner received ineffective assistance of counsel, cause is ordinarily shown by demonstrating that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 488. A habeas petitioner demonstrates prejudice by establishing that the constitutional errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis omitted).

Ground 2 of Schneider's amended petition alleged that Schneider was denied effective assistance of counsel when his

trial counsel failed to object to Dehmer's testimony that he was a member of the Aryan Warriors or Aryan Brotherhood. Ground 7 alleged that Schneider was denied effective assistance of counsel at sentencing when his counsel failed to move to have him examined to determine if he was competent to assist counsel at trial. Schneider presented both of these claims for the first time in his state habeas petition in November 2005.

The Supreme Court of Nevada rejected Schneider's claims under section 34.726(1) of the Nevada Revised Statutes. That statute provides,

> Unless there is good cause shown for delay, a petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the Supreme Court issues its remittitur. For the purpose of this subsection, good cause for delay exists if the petitioner demonstrates to the satisfaction of the court:
>
>     (a) That the delay is not the fault of the petitioner; and
>
>     (b) That dismissal of the petition as untimely will unduly prejudice the petitioner.

Nev. Rev. Stat. 34.726(1). Schneider does not argue that section 34.726(1) is not an adequate and independent state ground. He argues only that his procedural default should be excused because his mental condition prevented him from complying with the state's requirements.

Schneider's argument is foreclosed by *Hughes v. Idaho State Board of Corrections*, where we confirmed that the cause and prejudice standard applies to a pro se petitioner's

procedural default. 800 F.2d 905, 908 (9th Cir. 1986). In that case, the petitioner did not establish cause for his default in failing to appeal the denial of his state petition for post-conviction relief where that default resulted from his illiteracy and the loss of legal assistance by another inmate. *Id.* at 909. We reasoned,

> When a pro se petitioner is able to apply for post-conviction relief to a state court, the petitioner must be held accountable for failure to timely pursue his remedy to the state supreme court. To hold that illiteracy is a legitimate cause for failing to appeal to the state supreme court would allow petitioners to wait until the jurisdictional period lapsed and then proceed directly to federal court. Such a result would be contrary to the principles of comity underlying the cause and prejudice rule.

*Id.*

We developed this principle further in *Tacho v. Martinez*, 862 F.2d 1376 (9th Cir. 1988). In that case, the state court denied a claim in the petitioner's third state petition for post-conviction relief on the ground that he had failed to raise the claim on direct appeal or in his two prior post-conviction petitions. *Id.* at 1378. Tacho alleged that he had been diagnosed as "borderline mental defective," and argued that his mental condition excused his procedural default. *Id.* at 1381. Relying on *Hughes*, 800 F.2d at 909, we rejected his argument:

> While Tacho's mental condition may or may not be a more serious infirmity than Hughes' illiteracy, Tacho, unlike Hughes, has had help from other inmates. Tacho has, in fact, had an attorney for all of his post-conviction petitions except the one raising the claim involved in the instant petition. If an illiterate petitioner's complete lack of assistance is not cause to excuse a procedural default, it necessarily

follows that a literate pro se petitioner who has had such assistance cannot establish cause.

*Tacho*, 862 F.2d at 1381.

[11] The legal principle that we distill from *Hughes* and *Tacho* is that a pro se petitioner's mental condition cannot serve as cause for a procedural default, at least when the petitioner on his own or with assistance remains "able to apply for post-conviction relief to a state court." *Hughes*, 800 F.2d at 909; *see also Tacho*, 862 F.2d at 1381. *Hughes* and *Tacho* do not necessarily foreclose the possibility that a pro se petitioner might demonstrate cause in a situation where a mental condition rendered the petitioner completely unable to comply with a state's procedures and he had no assistance. But they do prevent us from excusing a procedural default where a mental defect had less of an adverse effect on the petitioner's ability to comply with state procedures than illiteracy would have had.

Here, the district court made a factual finding that Schneider's "conditions imposed far less of a restriction upon his ability to seek state court relief timely than did the illiteracy of the petitioner in *Hughes*." Findings of Fact, Conclusions of Law, and Order at 42 (Oct. 23, 2008). This factual finding was not clearly erroneous. We are therefore bound, as was the district court, by *Hughes*.

Schneider presented an expert psychological opinion that the district court found credible and persuasive. The district court concluded from this testimony that Schneider "would have likely been unable to file a timely federal petition with [his mental health] conditions unless another individual actively pursued the multiple required steps for him. Schneider's mental health conditions, in particular, made it unlikely that he would be able to maintain the focus, pace, consistent direction, and organizational ability required to complete the multiple steps required to prepare a post-conviction petition."

*Id.* at 17. Based on these findings, the district court applied the doctrine of equitable tolling to excuse the tardiness of Schneider's federal petition.

The district court's result seems strange at first glance. One might ask, how is it that Schneider's mental conditions so impeded his ability to file post-conviction petitions as to justify the application of equitable tolling, but did not so impede his ability to file a state post-conviction petition as to demonstrate cause for a procedural default? But, as the district court recognized, "[t]he standard to determine whether the petitioner has demonstrated cause vis-à-vis the procedural default doctrine is not the same as the standard applied above to determine whether the one-year federal limitation period should be equitably tolled." *Id.* at 41-42. Principles of comity require federal courts to respect state procedural bars to post-conviction relief. *Hughes*, 800 F.2d at 909. These considerations do not apply to the question of whether a federal court should apply equitable tolling to a late-filed federal petition. In other words, in exercising its discretion in applying the doctrine of equitable tolling, the district court did not need to consider whether Schneider's mental conditions imposed a greater or lesser impediment to his ability to file a petition than illiteracy would have. But in determining whether Schneider established cause for his procedural default, *Hughes* and *Tacho* required such an analysis.

**[12]** Based on the evidence before it, the district court could have properly found that Schneider's mental health conditions impeded his ability to file a post-conviction petition timely without rendering him completely unable to do so. The evidence does not preclude a finding that illiteracy would have imposed an even greater hurdle to complying with state procedures than Schneider's mental health conditions. The district court made this finding and, properly applying *Hughes*, refused to excuse Schneider's procedural default.

Schneider argues that in other circuits mental incapacity may constitute cause for a procedural default. In particular, he directs us to *Holt v. Bowersox*, which held:

> Our cases establish that, in order for mental illness to constitute cause and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief.

191 F.3d 970, 974 (8th Cir. 1999), *citing Garrett v. Groose*, 99 F.3d 283, 285 (8th Cir. 1996); *Nachtigall v. Class*, 48 F.3d 1076, 1080-81 (8th Cir. 1995); and *Stanley v. Lockhart*, 941 F.2d 707, 708-10 (8th Cir. 1991). We need not decide the question now of whether something along the lines of the Eighth Circuit's rule might apply where an unassisted pro se petitioner's mental condition imposes a greater impediment to his ability to seek post-conviction relief than would illiteracy. Where, as here, a district court finds as a matter of fact that the petitioner's mental conditions "imposed less of a restriction upon his ability to timely seek state court relief than did the illiteracy of the petitioner in *Hughes*," we are bound by our own precedent, and affirm the district court.[1]

---

[1]Judge Noonan reads our decision as creating a division with the Eighth Circuit. *Post* at slip op. 3694. The cases are not necessarily inconsistent. However, to the extent our opinion cannot be reconciled with the Eighth Circuit's rule, the split was not created by us. As a three-judge panel, we are bound to follow our own precedents unless they are clearly irreconcilable with intervening higher authority. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). *Hughes* and *Tacho* provide the rule for determining whether a state prisoner's mental impairment constitutes cause for his procedural default. That rule, as applied to Schneider, requires us to conclude that his mental impairment cannot excuse his procedural default.

**D.**

Finally, Schneider included in his opening brief an issue that was not in the certificate of appealability. We construe such as a motion to expand the certificate of appealability. Fed. R. App. P. 22, Circuit Rule 22-1(e). We have jurisdiction to consider such a motion and will grant it only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c).

Schneider contends that the district court denied his constitutional right to an evidentiary hearing on Ground 1 of his amended petition. The district court denied Schneider's request, reasoning that "Ground 1 is a claim of trial error based upon the failure of the state district court to grant a mistrial based upon what Lisa Dehmer said at trial. Her statements in the record either were a basis for a mistrial or they were not." *Schneider v. McDaniel*, No. 3:06-cv-00449-KJD-RAM, 2009 WL 2105707, at *6 n.6 (D. Nev. July 9, 2009).

**[13]** Schneider has not made a substantial showing that he was entitled to an evidentiary hearing. He does not even identify any evidence that he argues the district court should have considered. We decline to expand the certificate of appealability.

**AFFIRMED.**

---

NOONAN, Circuit Judge, concurring and dissenting:

I concur in the opinion of the court, clear and convincing as it is in most respects, except as to one vital point as to which I dissent: the tolling of the time for filing for post-conviction relief.

The district court found that Schneider's "mental health conditions constituted extraordinary circumstances standing

in the way of his filing a timely federal petition, such that he likely would have been unable to file a timely federal petition due to those circumstances." The district court found further: Schneider "would have likely been unable to file a timely federal petition with these conditions unless another individual actively pursued the multiple required steps for him. Schneider's mental health conditions, in particular, made it unlikely that he would be able to maintain the focus, pace, consistent direction, and organizational ability required to complete the multiple steps required to prepare a post-conviction petition." In the eight years in which he did nothing, there was no other person to assist him. He was, the district court concluded, incapable of filing a federal petition.

Why, in the same time period, was he capable of filing a state petition? The district court did not say. Was Schneider able to maintain focus, pace and consistent directions when he addressed the state? The district court had found incapacity to prepare the federal petition. What different capacity did Schneider possess when the petition was submitted to the state?

Not addressing these questions, the court in the instant opinion first speaks of comity as a consideration that the district court properly considered. Comity cannot change a fact. Comity cannot convert lack of focus, pace, consistency of direction and organizational skills into capabilities now enjoyed by the state petitioner. Comity cannot turn incompetence into competence.

The instant opinion drops comity and moves to cite *Hughes* and *Tacho*. Neither is relevant or of help here. In *Tacho*, the petitioner had the assistance of another person. Here, for eight years Schneider did not. In *Hughes*, the petitioner was illiterate but not ill in mind. Illiterate persons are capable of informing themselves by speaking to others. They are not incapacitated in understanding or in judgment. To draw an analogy between an illiterate petitioner and a mentally

impaired petitioner is to deny basic differences in the two conditions.

As the instant opinion observes, the Eighth Circuit has reached a different conclusion, so that unfortunately the instant opinion creates a circuit split.

For these reasons the district court erred in its factfinding, and the instant opinion endorses the error.