**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATTHEW RYAN SEXTON,
          *Petitioner-Appellant,*

          v.

MIKE COZNER, Superintendent,
MacLaren Youth Correctional
Facility,

          *Respondent-Appellee.*

No. 10-35055

D.C. No.
3:06-cv-00209-AC

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
May 8, 2012—Portland, Oregon

Filed May 13, 2012
Amended May 14, 2012

Before: A. Wallace Tashima, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Tallman

**COUNSEL**

Mark Bennett Weintraub, Assistant Federal Public Defender, Eugene, Oregon, for petitioner-appellant Matthew Sexton.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General, Salem, Oregon, for respondent-appellee Mike Cozner, Superintendent, MacLaren Youth Correctional Facility.

**ORDER**

The opinion filed on May 13, 2012, is AMENDED as follows: The phrase "and Sexton does not present a substantial claim that PCR counsel was ineffective" on page 17 of the opinion is replaced with "and Sexton does not present a substantial claim that trial counsel was ineffective.".

An amended opinion will be filed concurrently with this order.

## OPINION

TALLMAN, Circuit Judge:

Matthew Ryan Sexton ("Sexton" or "Petitioner"), an Oregon state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. He argues that trial counsel's advice regarding his guilty plea was constitutionally inadequate, thereby rendering his plea unknowing or involuntary. Sexton also seeks a limited remand under the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), to allow the district court to review the merits of two new claims for ineffective assistance of trial counsel that he raised for the first time in his federal habeas petition, but that the district court ruled were procedurally defaulted.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we deny Sexton's motion for a limited remand and affirm the denial of his § 2254 habeas petition.

I

We review the dismissal of a habeas petition and questions regarding procedural default de novo. *Ivy v. Pontesso*, 328 F.3d 1057, 1059 (9th Cir. 2003); *Sivak v. Hardison*, 658 F.3d 898, 906 (9th Cir. 2011). If the state prisoner's claim was adjudicated on the merits in state court, we may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

## II

The pertinent facts regarding Sexton's involvement in the murders and the procedural history, as summarized by the district court, are as follows:

> In 1998, when Petitioner was seventeen, he was indicted on four counts of Aggravated Murder with a Firearm in the deaths of his father and mother. Petitioner confessed to shooting his parents and he led police to the locations where he had left the bodies. He later recanted, claiming his younger brother shot his parents and that his confession was to protect his brother. Following Petitioner's recantation, counsel arranged for Petitioner to take a polygraph, but Petitioner failed it. Despite counsel informing Petitioner the polygraph was not admissible and his recantation was a plausible defense, Petitioner confessed anew during the defense's psychological evaluation.

> Plea negotiations led to the Aggravated Murder charges being reduced and Petitioner pleading guilty to two counts of intentional Murder, with the issue of consecutive versus concurrent sentencing reserved for the court following argument. Counsel hired a nationally known expert on parricide who recommended Petitioner's allegations of abuse by his father be presented as a mitigating factor supporting concurrent terms of imprisonment. Counsel also met with the family on several occasions and understood them to support concurrent sentencing, until the issue of abuse as a mitigating factor was raised. At the sentencing hearing, a number of family members spoke in favor of consecutive sentencing, possibly in response to Petitioner's allegations of abuse. The sentencing court imposed two consecutive life terms of imprisonment under Ballot Measure 11, with a

minimum of twenty-five years each without the possibility of parole.

Petitioner filed a direct appeal, challenging the constitutionality of consecutive sentencing under Ballot Measure 11, as applied to him. The Oregon Court of Appeals affirmed the sentencing court without opinion, and the Oregon Supreme Court denied review.

Petitioner filed for post-conviction relief ("PCR"), raising seven claims of ineffective assistance of counsel, and two claims alleging his pleas of guilty were not knowingly, intelligently and voluntarily made. He contended he pled guilty to the murders to make his family happy and to protect his younger brother, whom he alleged committed the murders. The PCR trial court denied relief, issuing extensive written findings. Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.

*Sexton v. Cozner*, No. 06-CV-209-AC, 2009 WL 5173714, at *1-2 (D. Or. Dec. 21, 2009) (internal citations omitted).

Relevant here, the state PCR court rejected Sexton's claim that his trial counsel was constitutionally ineffective in representing to Sexton that his family members would support concurrent sentences, thereby rendering his guilty plea unknowing and involuntary. The court found that the plea agreement and transcript of the plea hearing showed that Sexton understood that it was within the discretion of the trial judge to impose consecutive sentences, and he did not actually believe that he would get concurrent treatment based upon trial counsel's representation as to the anticipated family recommendation. Further, the court held that Sexton would have pleaded guilty in any event, and was not credible to the extent he claimed otherwise.

Sexton was represented by appointed counsel in both the direct appeal and in the PCR habeas proceeding before the Oregon courts. At trial and on direct appeal, he was represented by attorney Kenneth Hadley. In the state PCR proceeding, he was represented by David Kuhns.

Sexton, however, filed a *pro se* federal habeas petition on February 14, 2006, where he raised a number of issues. First, Sexton argued, as he had in the state PCR court, that trial counsel was ineffective because he failed to inform Sexton that his family would likely support the prosecution's position that his sentences should be consecutive and that, as a result, his guilty plea was unknowing and involuntary. Sexton also raised two new claims of ineffective assistance of trial counsel that were not adjudicated in state court. Specifically, he argued that trial counsel was ineffective because he (1) arranged for Sexton to take a polygraph conducted by a law enforcement examiner, and (2) provided to the District Attorney ("D.A.") a full written account prepared by Sexton in which he recanted his earlier confession to the murders and claimed that his younger brother, Brian Sexton, killed his parents.

On November 3, 2008, Sexton filed a Memorandum in Support of the Federal Habeas Petition, where he argued he received ineffective assistance of counsel because his attorney: (1) violated the attorney-client privilege by disclosing the confidential recantation letter he received from Sexton; (2) agreed to a non-confidential polygraph examination, which Sexton failed and the results of which the judge relied on at sentencing; and (3) misled Sexton into entering a guilty plea by leading him to believe that his family would support concurrent sentences that would have made him eligible for parole after twenty-five years.

Magistrate Judge John V. Acosta issued Findings and Recommendations ("Report and Recommendation") on September 11, 2009, in which he recommended that the district court

deny Sexton's habeas petition. As to the claim regarding ineffective assistance of trial counsel resulting in an involuntary guilty plea, the Magistrate Judge held that the PCR court's factual findings that Sexton's plea was knowing and voluntary were presumed to be correct pursuant to 28 U.S.C. § 2254(e)(1), and that Sexton had not shown that the PCR court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law. The Report and Recommendation also concluded that Sexton's ineffective assistance of counsel claims regarding the disclosure of the confidential recantation letter blaming his brother for the murders, and trial counsel's decision to allow Sexton to be subjected to a state-administered polygraph without first conducting a private polygraph, were procedurally defaulted because Sexton failed to raise them during the state PCR proceedings. As a result, the Report and Recommendation concluded that Sexton failed to exhaust state remedies, and because he did not attempt to excuse the procedural default, habeas relief was precluded.

Judge Anna J. Brown of the District of Oregon adopted the Report and Recommendation and denied Sexton's habeas petition. On December 30, 2009, the district court denied a certificate of appealability, stating that Sexton failed to make a substantial showing of the denial of a constitutional right. The district court dismissed the petition with prejudice the following day.

On July 18, 2011, we granted Sexton's request for a certificate of appealability as to the issue whether Sexton's trial counsel's advice regarding Sexton's guilty plea was constitutionally inadequate, thereby rendering Sexton's plea unknowing or involuntary. The parties subsequently submitted briefing on that issue, and we set oral argument for May 8, 2012.

After briefing was completed in this case, but before we had the opportunity to hear argument, the Supreme Court

decided *Martinez v. Ryan*. On April 16, 2012, shortly after the decision in *Martinez*, Sexton filed a Motion for Limited Remand and to Strike the May 8, 2012, Oral Argument ("Motion"). In that Motion, Sexton asked us to: (1) remand the case to the district court to consider whether, in light of *Martinez*, it would excuse the procedural default of his new ineffective assistance of counsel claims; and (2) strike the oral argument from the May 8, 2012, calendar; or (3) alternatively, to expand the COA to address the *Martinez* issue in the first instance.

The Warden filed a supplemental brief opposing the Motion on two grounds. First, the Warden argued that Sexton's claims for which he seeks a limited remand do not fall within the narrow exception created in *Martinez* for "substantial" legal claims; and second, that Sexton fails to demonstrate that he was denied the opportunity to develop his ineffective assistance of counsel claims at the PCR stage due to the ineffective assistance of his post-conviction trial counsel.

On April 27, 2012, we denied Sexton's motion to strike oral argument, deferred consideration of his argument on the merits and his motion for a limited remand until after oral argument, and directed the parties to be prepared to address whether *Martinez* applies here and if limited remand to the district court is necessary. We also deferred until after oral argument our decision to issue a Certificate of Appealability regarding the uncertified *Martinez* issue. We expand the Certificate of Appealability to address this issue, 9th Cir. R. 22-1(e); *Hiivala v. Wood*, 195 F.3d 1098, 1104-05 (9th Cir. 1999) (per curiam), but deny all relief.

## III

Sexton argues that his guilty plea was unknowing and involuntary because trial counsel was ineffective in failing to advise him that his family would likely oppose concurrent sentences. We disagree and hold that the advice provided by

trial counsel with regard to Sexton's guilty plea was constitutionally adequate under *Strickland v. Washington*, 466 U.S. 668 (1984), and that Sexton's plea was knowing and voluntary as a result. Because Sexton's claim fails under de novo review, it necessarily fails under AEDPA's deferential review. *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264 (2010).

**[1]** Sexton cannot establish that his attorney's performance fell below an objective standard of reasonableness, or that there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985); *Strickland*, 466 U.S. at 687. First, Sexton fails to show that Hadley performed deficiently by failing to inform Sexton at the time he pleaded guilty that some members of the victims' family might support the prosecution's recommendation that Sexton's sentences should run consecutively. Sexton swore in open court that his guilty plea was not the result of any promises not specified in the plea agreement, *see Weaver v. Palmateer*, 455 F.3d 958, 968-69 (9th Cir. 2006), and expressly acknowledged that the ultimate decision as to the appropriate sentence lay solely with the court. Moreover, defense counsel's decision to discuss Sexton's history as a victim of parental abuse, which allegedly caused certain members of the victims' family to abandon their support for Sexton's sentences to run concurrently, was a strategic decision that cannot form the basis of a claim for ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

**[2]** Second, the record does not support Sexton's assertions that but for his counsel's failure to advise him of his family's position on sentencing, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Lambert v. Blodgett*, 393 F.3d 943, 979-80 (9th Cir. 2004); *Langford v. Day*, 110 F.3d 1380, 1388 (9th Cir. 1997). At the plea hearing, Sexton stated he understood that each count of intentional murder carried a mandatory sentence of life imprisonment with a minimum of twenty-five years imprison-

ment. He acknowledged that the sentences could run consecutively or concurrently, and that he could "face a maximum potential penalty of up to fifty years imprisonment as a minimum sentence if the [ ] sentences [were] made to run consecutive[ly]." He affirmed that the only promises made to him were contained in the plea agreement, which clearly informed Sexton that the judge was not bound by sentencing recommendations and could impose concurrent or consecutive sentences. Under these circumstances, Sexton cannot demonstrate that he was prejudiced by his attorney's prediction. *Womack*, 497 F.3d at 1003-04.

[3] Finally, the state court's adverse credibility finding was not unreasonable or incorrect by clear and convincing evidence. *Miller-el v. Cockrell*, 537 U.S. 322, 340 (2003); *Weaver*, 455 F.3d at 969. The PCR court, after reviewing the transcript of the sentencing, the plea document, the deposition testimony of Sexton, the affidavit of trial counsel, and sixty-two exhibits admitted into evidence, concluded Sexton was not credible.[1] We must defer to that finding of fact, because Sexton has not presented clear and convincing evidence to rebut the PCR court's adverse determination that he was not credible. 28 U.S.C. § 2254(d) and (e)(1).

[4] Because Sexton has not established that he received ineffective assistance of counsel under de novo review, *a fortiori* he has not shown that the PCR court's rejection of this claim was contrary to, or an unreasonable application of,

---

[1]We note that Sexton has told different stories about what happened on July 14, 1998, the night of the murders. He confessed to sheriffs' deputies that he laid in wait and killed his parents. Then he recanted before his plea, insisting to his defense lawyer that his younger brother did it. When he failed the polygraph, he reverted to the first confession by once again admitting his guilt to the defense psychologist, who testified in mitigation at his sentencing proceeding. Then, when he was represented by a new lawyer during the State post-conviction proceedings, he once again asserted that he was innocent. This constant prevarication led to the adverse credibility finding on post-conviction review.

clearly established federal law. *See Berghuis*, 130 S. Ct. at 2264; *see also Cooper v. Brown*, 510 F.3d 870, 885 n.10, 919 (9th Cir. 2007). Therefore, we may not grant habeas relief on this claim. *See* 28 U.S.C. § 2254(d).

IV

**[5]** Sexton argues that this case should be remanded to the district court following the Supreme Court's decision in *Martinez*, 132 S. Ct. at 1309. We address whether remand is appropriate in this case, where the district court found that an ineffective assistance of counsel claim was procedurally defaulted as a result of PCR counsel's failure to raise the claim in state court, despite having raised seven other ineffective assistance of counsel claims at the PCR stage.

Sexton is entitled to a remand if he can show that PCR counsel was ineffective under *Strickland* for not raising a claim of ineffective assistance of trial counsel, and also "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one . . . ." *Martinez* at 1318. In order to show ineffectiveness of PCR counsel, Sexton must show that PCR counsel's failure to raise the claim that trial counsel was ineffective was an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and caused Sexton prejudice. *Strickland*, 466 U.S. at 687. Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009), so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless. Accordingly, a PCR counsel would not be ineffective for failure to raise an ineffective assistance of counsel claim with respect to trial counsel who was not constitutionally ineffective. Further, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

(citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (emphasis added)).

We therefore examine the record to determine whether there is sufficient evidence before us on the necessary showing under *Martinez*—ineffective assistance of PCR counsel (due to failing to raise ineffective assistance of trial counsel) that would allow us to decide whether Sexton has demonstrated "cause." Only if we determine that Sexton has demonstrated cause, would we proceed to determine if Sexton has demonstrated prejudice to meet the "cause and prejudice" standard, and has also demonstrated a "substantial claim of ineffective assistance at trial," *id.* at 1321. As the Supreme Court explained in *Martinez*:

> To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counselclaim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318 (citation omitted). We hold that in light of the record in this case, remand to the district court is not proper under *Martinez* because Sexton does not meet the narrow circumstances recently announced by the Supreme Court necessary to show "cause," the first prong necessary to avoid the procedural bar.

A

Generally, "a state prisoner's failure to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state ground doctrine." *Schneider v. McDaniel*, 674 F.3d 1144, 1152 (9th Cir. 2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

Specifically, the Supreme Court has held:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred *unless* the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750 (emphasis added).

"Cause" under *Coleman*, "must be something *external* to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753 (emphasis in original); *see also Schneider*, 674 F.3d at 1153 ("Unless the prisoner received ineffective assistance of counsel, cause is ordinarily shown by demonstrating that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." (internal citation and quotation marks omitted)).

To demonstrate "prejudice," a habeas petitioner must "establish [ ] that the constitutional errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Schneider*, 674 F.3d at 1153 (internal quotation marks omitted).

In evaluating ineffective assistance of counsel claims in habeas proceedings, we have cited *Coleman* for the proposition that an attorney's negligence in a post-conviction proceeding did not establish "cause," and therefore the negligence was insufficient to excuse procedural default. *See Towery v. Ryan*, 673 F.3d 933, 941 (9th Cir. 2012) ("A federal habeas petitioner—who as such does not have a Sixth Amendment right to counsel—is ordinarily bound by his [PCR] attorney's negligence, because the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent.") (citing *Coleman*, 501

U.S. at 753 ("Attorney ignorance or inadvertence is not 'cause' [for excusing procedural default] because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." (internal citation and quotation marks omitted))).

Our analysis, however, is now subject to a limitation following the Supreme Court's decision in *Martinez*, where the Court announced a "narrow exception" to its decision in *Coleman* by holding that:

> Where under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will *not* bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S. Ct. at 1320 (emphasis added).

In acknowledging this "limited qualification" to the *Coleman* rule, the Supreme Court in *Martinez* reaffirmed the general holding in *Coleman*: "that an attorney's negligence in a postconviction proceeding does not establish cause . . . remains true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial." *Id.* at 1319 (emphasis added). In applying this standard, *Martinez* made clear that a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, *and* whether there is prejudice. *Id.* at 1321.

**[6]** For the purposes of our review in this case, therefore, *Martinez* instructs that Sexton may establish cause for his pro-

cedural default of his new ineffective assistance of trial counsel claims, because the State of Oregon required Sexton to raise them in a collateral proceeding, *State v. Robinson*, 550 P.2d 758 (Or. App. 1976).

B

We now look to the record to verify if the ineffective assistance of PCR counsel claim is sufficiently worthy to merit further consideration. To establish that PCR counsel was ineffective, Sexton must show that trial counsel was likewise ineffective, and that PCR counsel's failure to raise trial counsel's ineffectiveness in the PCR proceeding fell below an objective standard of reasonableness. If trial counsel was not ineffective, then Sexton would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR counsel "was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Strickland*, 466 U.S. at 687.

Here, we are satisfied that trial counsel was not ineffective. Thus, there was no *Strickland* violation, no reason for Sexton's subsequent PCR counsel to pursue those additional claims, and Sexton does not present a substantial claim that trial counsel was ineffective.

To establish an ineffective assistance of counsel claim, Sexton must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687; *Ben-Sholom v. Ayers*, 674 F.3d 1095, 1100 (9th Cir. 2012). "To establish deficient performance," as the Supreme Court recently summarized in *Premo v. Moore*, "a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." 131 S. Ct. 733, 739 (2011) (internal citation and quotation marks omitted). We strongly presume "that counsel's representation was within the wide range of reasonable professional assistance." *Id.* To establish

"prejudice," a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

With *Martinez*'s "narrow exception" and the *Strickland* test in mind, we turn to the record presently before us to determine if Sexton has established cause and prejudice by evaluating Sexton's new ineffective assistance of counsel claims.

1

Sexton argues that Kuhns failed to set forth an ineffective assistance of counsel claim by Hadley, who allegedly breached the attorney-client privilege when he disclosed to the D.A. the confidential letter blaming his brother, and failed to conduct a private polygraph examination before subjecting Sexton to a polygraph administered by the State. Sexton insists Hadley's decisions were incompetent and prejudicial because the sentencing judge relied on that information in determining that Sexton's sentences should run consecutively.[2] We disagree.

[7] The record reveals that Hadley's decision to proceed with the State's preferred polygrapher was a reasonable tactical decision that cannot form the basis of a claim for ineffective assistance of counsel. *Strickland*, 466 U.S. at 689. In an affidavit prepared for the PCR proceedings, Hadley explained that he "accepted Matthew's recantation completely" when his client stated he had not killed his parents. Further, because

---

[2]At sentencing, the judge stated:

I'm not optimistic about this defendant's likelihood of rehabilitation. In addition to the lack of remorse and regret, this defendant also apparently was willing just a short time ago to deny any responsibility for these crimes and, in fact, to falsely accuse his younger brother of committing these heinous crimes.

the D.A. in charge of Sexton's case was elected to the Oregon Circuit Court and was preparing to turn over his old position to his deputy, Hadley felt that he had to seize the opportunity quickly because he thought he had a better chance of convincing the outgoing D.A. to drop the charges against Sexton or at least to mitigate the sentence. In so doing, he requested the polygraph because he knew the outgoing D.A. would accept a "pass" where other prosecutors might not. He agreed that Sexton's polygraph be administered by a member of the Salem Police Department—who had on prior occasions passed two of Hadley's former clients, resulting in dismissal of all charges or greater leniency in a plea bargain—in hopes of achieving a similar result for Sexton. Further, Hadley explained to Sexton that the results of the polygraph test were not admissible as evidence in the State's case-in-chief. As a result, even though Sexton failed the polygraph, Hadley informed Sexton that they could go to trial and "had a decent chance to get him acquitted." Sexton, however, "went back to his original confession during his interview with [the] defense psychologist."

**[8]** Further, Hadley's decision to give the D.A. the letter from Sexton—where Sexton expressed he was innocent, and that his brother, Brian Sexton, had in fact committed the murders—was also strategic. The letter was protected from use at trial by the State under the privilege surrounding statements made during plea negotiations, *see* Or. Rev. Stat. § 135.435(1)(c) ("Any statement or admission made by the defendant or the attorney of the defendant to the district attorney and as a part of the plea discussion or agreement," shall not "be received in evidence for or against a defendant in any criminal or civil action or administrative proceeding."), and could have swayed the D.A. to drop the charges against Sexton or mitigate the punishment.

**[9]** As a result, given the extensive record before us on this point, we fail to see how Hadley's representation fell below an objective standard of reasonableness. *Premo*, 131 S. Ct. at

739. In addition, because Sexton repeatedly vacillated between guilt and innocence for the murders, he fails to show that there is a reasonable probability that, but for Hadley's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Because Hadley's performance was neither deficient nor caused Sexton prejudice, it was not ineffective assistance of counsel as defined in *Strickland*.

2

**[10]** Because the record before us regarding Hadley's representation is sufficiently complete for us to hold without hesitation that Hadley was not ineffective under *Strickland*, we hold that PCR counsel, Kuhns, similarly could not have been ineffective for failing to raise the ineffective assistance of counsel claim in state court. Even without the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," we conclude that Kuhns's representation of Sexton could not fall "below an objective standard of reasonableness," merely because he declined to raise meritless claims that Hadley was ineffective. *Strickland*, 466 U.S. at 688.

**[11]** Because Sexton has not shown that Kuhns was ineffective, he has not shown cause to excuse his procedural default, and therefore, has not shown that his case warrants remand under *Martinez*. There may be cases where the record is devoid of sufficient information necessary to evaluate whether PCR counsel was ineffective and, as a result, remand under *Martinez* would be necessary. However, due to the extensive record already before us, that is not the case here. Consequently, we hold that Sexton has not met the standard of showing "cause and prejudice" under *Martinez* to excuse the procedural default that otherwise bars his litigation of the two new grounds to support his ineffective assistance of counsel claim regarding Kuhns. If Hadley was not ineffective before the plea, Kuhns could not have been ineffective on

habeas appeal for failing to raise these two additional claims at the PCR stage before the Oregon courts.

V

The advice provided by trial counsel with regard to Sexton's guilty plea was constitutionally adequate and Sexton's plea was knowing and voluntary as a result. Sexton knew at the time he pled guilty that it was possible the sentences would run consecutively.

**[12]** We deny Sexton's Motion for a Limited Remand because our reading of *Coleman*, in conjunction with *Martinez*, leads us to the conclusion that, in light of the extensive record before us regarding the two new claims for ineffective assistance of counsel, Sexton cannot meet the "narrow circumstances" exception recognized in *Martinez* to show "cause and prejudice." Consequently, Sexton fails to overcome the procedural bar under *Coleman*.

**PETITIONER'S MOTION FOR A LIMITED REMAND IS DENIED and THE DISMISSAL OF HIS FEDERAL HABEAS PETITION IS AFFIRMED.**