FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID MARTINEZ RAMIREZ,<br>*Petitioner-Appellant*,<br><br>v.<br><br>CHARLES RYAN,<br>*Respondent-Appellee.* | No. 10-99023<br><br>D.C. No.<br>2:97-cv-01331-JAT<br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Argued and Submitted January 16, 2019
San Francisco, California

Filed September 11, 2019

Before: Sidney R. Thomas, Chief Judge, and Marsha S.
Berzon and Richard R. Clifton, Circuit Judges.

Opinion by Chief Judge Thomas;
Partial Concurrence and Partial Dissent by Judge Berzon

## SUMMARY[*]

### Habeas Corpus / Death Penalty

The panel affirmed in part and reversed in part the district court's denial of David Ramirez's habeas corpus petition challenging his Arizona conviction and death sentence for the murders of his girlfriend and her daughter, and remanded.

The panel explained that the district court—on remand for reconsideration of whether post-conviction counsel's ineffectiveness constituted cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default of Ramirez's claim of trial counsel's ineffectiveness—erred by conducting a full merits review of the underlying ineffective assistance of counsel claim on an undeveloped record, rather than addressing whether the claim was "substantial." The panel held that the underlying claim of ineffective assistance of trial counsel was substantial, thus constituting "prejudice" under *Martinez*, because trial counsel failed to present or pursue evidence of Ramirez's intellectual disability, failed to provide relevant and potentially mitigating evidence to the psychologist who evaluated Ramirez, and subsequently relied on the psychologist's report, despite possessing contrary facts. The panel held that Ramirez established cause under *Martinez* because had post-conviction counsel raised the substantial claim of ineffective assistance of trial counsel, there is a reasonable probability that the result of the post-conviction proceedings would have been different.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court erred in denying Ramirez evidentiary development of his ineffective assistance of counsel claim, and that on remand he is entitled to evidentiary development to litigate the merits of his ineffective assistance of trial counsel claim.

The panel held that the district court correctly concluded that Ramirez's due process rights under *Ake v. Oklahoma*, 470 U.S. 68 (1985), were not violated, as Ramirez received the assistance of an independent psychologist, and there was no impermissible waiver of self-representation.

The panel held that the Arizona state courts did not unconstitutionally apply a causal nexus requirement to Ramirez's mitigating evidence in violation of *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015).

The panel declined to expand the certificate of appealability to include three uncertified issues.

Dissenting in part, Judge Berzon would grant a certificate of appealability with regard to Ramirez's claim under *Atkins v. Virginia*, 536 U.S. 304 (2002) (prohibiting the execution of intellectually disabled persons); hold that the claim relates back to Ramirez's ineffective assistance of counsel claim; and remand to the district court for further proceedings.

---

**COUNSEL**

Paula K. Harms (argued) and Timothy M. Gabrielsen, Assistant Federal Public Defenders; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Phoenix, Arizona; for Petitioner-Appellant.

John P. Todd (argued), Special Assistant Attorney General; Lacey Stover Gard, Chief Counsel; Mark Brnovich, Attorney General; Office of the Attorney General, Phoenix, Arizona; for Respondent-Appellee.

# OPINION

THOMAS, Chief Judge:

David Ramirez was convicted by a jury and sentenced to death by a judge for the 1989 murders of his girlfriend, Mary Ann Gortarez and her daughter, Candie. Ramirez appeals the district court's denial of his petition for writ of habeas corpus, raising three certified claims and three uncertified claims. Because Ramirez demonstrated cause and prejudice to overcome the procedural default of his ineffective assistance of trial counsel claim, we reverse the judgment of the district court and remand for the district court to allow evidentiary development of Ramirez's ineffective assistance of trial counsel claim.

We affirm the district court's conclusion that Ramirez's right to due process under *Ake v. Oklahoma*, 470 U.S. 68 (1985), was not violated. We also agree that the Arizona state courts did not improperly exclude mitigating evidence that lacked a causal connection to his crime. *See McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015).[1] We decline to expand

---

[1] After briefing and oral argument of this appeal, the United States Supreme Court granted certiorari in *McKinney v. Arizona*, No. 18-1109, ___ U.S. ___ , 2019 WL 936074 (June 10, 2019), to address resentencing after a capital sentence is vacated due to a causal nexus error. Ramirez filed a motion for a stay pending the outcome of that case. Ramirez's

the certificate of appealability to include the three uncertified issues raised by Ramirez.

## I

The central question in this appeal is whether the procedural default of Ramirez's claim of ineffective assistance of trial counsel is excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). Because post conviction counsel, whom Arizona concedes performed deficiently, failed to raise a substantial claim of ineffective assistance of trial counsel in Ramirez's initial state collateral proceeding, we conclude that the procedural default is excused. Ramirez has an ineffective assistance of counsel claim "that has some merit" under *Martinez*, 566 U.S. at 14–16, because trial counsel failed to present or pursue evidence of Ramirez's intellectual disability, failed to provide relevant and potentially mitigating evidence to the psychologist who evaluated Ramirez, and subsequently relied on the psychologist's report, despite possessing contrary facts.

## A

In the early morning hours of May 25, 1989, neighbors alerted the police after hearing screams and thuds coming from the Gortarez apartment.[2] Officers arrived and observed

---

motion is **DENIED**. Because we conclude that the Arizona state courts did not apply an unconstitutional causal nexus requirement to Ramirez's mitigating evidence, no resentencing is required.

[2] Facts regarding the underlying murders are extensively discussed in the Arizona Supreme Court case affirming Ramirez's convictions on direct appeal. *State v. Ramirez*, 871 P.2d 237 (Ariz. 1994) (en banc).

Ramirez, who appeared to be intoxicated, covered in blood. *Ramirez v. Ryan*, No. CV-97-01331-PHX-JAT, 2016 WL 4920284, at *1 (D. Ariz. Sept. 15, 2016). Officers found Candie's naked body in a bedroom, and Mary Ann's body on the living room floor. *Id.* Both women had been stabbed multiple times. *Id.* Ramirez was charged with two counts of first degree murder. *Id.*

Ramirez was initially represented by counsel, Mara Siegel, a Maricopa County public defender.[3] This case was Siegel's first capital assignment, and, as she admitted, she was unprepared to represent someone "as mentally disturbed" as Ramirez. Ramirez, through counsel, filed a pretrial motion for appointment of experts, including psychologists and a mitigation expert, among others. In the motion, Ramirez cited *Ake* and requested the court pay for an independent psychiatric evaluation, a child psychologist, and a mitigation expert to assess his sanity at the time of the alleged offense.

The trial court denied Ramirez's requests for experts but appointed an investigator to assist Ramirez. During a subsequent pre-trial motions hearing, the investigator explained why a psychologist was important to help determine Ramirez's social upbringing and to collaborate with a mitigation specialist. The trial court expressed disbelief and confusion at the request for a mitigation specialist ("I have never heard of that in a quarter century") and psychiatrist ("I don't believe I have ever appointed a

---

[3] On October 6, 1989, Ramirez requested to represent himself by presenting an illegible motion to the court. Ramirez represented himself for a time, with Siegel as advisory counsel, until he requested she resume representation after jury selection. Siegel represented Ramirez through trial and sentencing. *Ramirez v. Ryan*, 2016 WL 4920284, at *4.

psychiatrist in my life"), noting that "I don't think that the defendant in this case deserves any favors from this Court because he represents himself. He's pulling this Court's leg, and I'm not impressed by that at all." Ultimately, the court agreed to appoint a fingerprint expert and serologist to assist Ramirez during the guilt phase. No psychologist was appointed for the merits trial. The case was transferred to a different judge for trial.

At trial, only one witness was called on behalf of the defense. Ramirez did not testify and the jury found him guilty of two counts of first-degree murder. *State v. Ramirez*, 871 P.2d at 239, 242.

B

After the jury returned the guilty verdicts, the trial court appointed a psychologist proposed by Ramirez, Dr. McMahon, "to test and evaluate the defendant's current mental health and, if such is deemed appropriate, conduct further diagnostic testing and evaluation." *Ramirez v. Ryan*, 2016 WL 4920284, at *4. Dr. McMahon met with Ramirez three times for a total of five hours and reviewed the documents trial counsel provided. Trial counsel provided Dr. McMahon with police reports, plea agreements from prior charges, the public defender's notes from an interview with Ramirez, and sentencing orders from two other convictions of burglary and theft. However, trial counsel did not provide Dr. McMahon with Ramirez's school records or IQ scores. Ultimately, trial counsel's case for mitigation consisted of a sentencing memorandum with attachments, and testimony from three of Ramirez's family members and two Arizona Department of Corrections employees who previously supervised Ramirez. *Id.* at *5–8.

1

The sentencing memorandum highlighted Ramirez's ability to adapt in the structured life of prison. *Id.* at \*5–6. The sentencing memorandum also discussed Ramirez's chaotic childhood, school attendance, history of substance abuse and sexual abuse, gang affiliation, and impaired state of mind at the time of the murders. *Id.* It also discussed Ramirez's life in prison and early involvement with the criminal justice system. Dr. McMahon's report, which was attached to the sentencing memorandum, detailed Ramirez's prior aggravated assault conviction and his work and prison history.

The sentencing memorandum asserted that Ramirez's ability to appreciate the wrongfulness of his conduct was substantially impaired, a statutory mitigating circumstance. Ramirez reported to Dr. McMahon that he had consumed approximately twelve drinks and shot up with cocaine multiple times on the evening of the murder, which led Dr. McMahon to conclude that Ramirez's ability to appreciate the wrongfulness of his conduct or conform his conduct to the law was significantly diminished due to his psychological condition and drug and alcohol intoxication on the night of the crimes. *Id.* at \*4–5.

The sentencing memorandum indicated that Ramirez's mother, Maria, was an alcoholic. However, Dr. McMahon's report provided the following contradictory observation: that Maria "never worked, devoting her time as a traditional Mexican-American mother whose responsibility revolves around the home and her children." The report observed that Ramirez's mother "was always there for [Ramirez] when he needed her as he was growing up." Ramirez told

Dr. McMahon that several family members had sexually abused him, but explained that he did not tell his mother about it because he "was fearful she would become extremely upset and angry." In completing his report, Dr. McMahon did not interview Ramirez's family members and relied solely on Ramirez's self-reporting and the records trial counsel provided.

Although the sentencing memorandum noted Ramirez's low IQ scores—70 and 77—trial counsel relied on Dr. McMahon's report to conclude that Ramirez was "now well within the average range of intelligence." Dr. McMahon measured Ramirez's IQ score using the Peabody Picture Vocabulary Test (PPVT), reporting that Ramirez scored 94, which is "in no way indicative of any form of mental retardation." The sentencing memorandum also noted that Ramirez changed schools ten times before seventh grade and did not complete high school.[4]

2

During the mitigation hearing, trial counsel subpoenaed three of Ramirez's family members to testify on his behalf: his aunt and two younger sisters. Ramirez's aunt, Erlinda Martinez, who was approximately the same age as Ramirez, testified that Maria was about sixteen when she gave birth to Ramirez. Ramirez's biological father was not around. Erlinda testified that she heard Maria drank while she was pregnant. Erlinda stated that Maria would stay out partying all night and would disappear for days. Maria was involved

---

[4] According to trial counsel, she contacted Ramirez's schools but many of Ramirez's school and psychological records were destroyed per state policy, so she was unable to provide additional records.

with "a lot of men."  She also testified that Maria would make Ramirez cook for his siblings and clean the house because Maria "wasn't home watching over the kids, the way a mother should."  Ramirez's grandmother raised Ramirez for a couple of years.  Erlinda also stated that Ramirez had behavioral problems as a child.

Mary Castillo, Ramirez's younger sister, testified that Ramirez was very affectionate, and helped to keep his siblings clothed and fed, but that Maria "was there for us too."**[5]**  Mary testified that Maria did not have a drinking problem until later in life.  She could not recall where Ramirez went to school or whether he changed schools frequently.

Cynthia Orozco, another of Ramirez's younger sisters, testified that Ramirez was a good brother who supported his wife and son.  Ramirez was older than Cynthia, and Cynthia testified that they were "hardly together" when they were younger.  She testified she did not have many memories before she was nine years old (when Ramirez would have been about fifteen years old).  In the year before the crime, Ramirez lived with her, helped her out with chores, and gave her money every week.

Two Department of Corrections employees who had supervised Ramirez in the prison kitchen testified about Ramirez's job duties in prison and said that Ramirez was a good worker.

---

**[5]** Declarations from Ramirez's family members later revealed that Mary Castillo was "also very slow" and could not read or write.

3

The sentencing judge found three aggravating circumstances: Ramirez had two prior violent felony convictions; the murders were committed in an especially cruel, heinous, or depraved manner; and he committed multiple murders at the same time. *State v. Ramirez*, 871 P.2d at 242.

The judge found the following statutory mitigating circumstance, that Ramirez's "capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law was significantly impaired." *Id.* The judge also found the following non-statutory mitigating circumstances:

> (1) his unstable family background,
>
> (2) his poor educational experience,
>
> (3) that he was a victim of sexual abuse while he was young,
>
> (4) his gang affiliation,
>
> (5) his chronic substance abuse,
>
> (6) his psychological history, and,
>
> (7) his love of family.

*Id.*

The judge sentenced Ramirez to death on both counts. *Id.* at 239. On direct appeal, the Arizona Supreme Court affirmed Ramirez's convictions and sentence. *Id.* at 239. The Arizona Supreme Court independently reviewed Ramirez's death sentence, affirming the trial court's assessment of aggravating and mitigating circumstances and imposition of the death sentence. The United States Supreme Court denied certiorari. *Ramirez v. Arizona*, 513 U.S. 968 (1994).

C

Ramirez filed his initial petition for post-conviction relief in state court, which was denied in its entirety in 1996. The Arizona Supreme Court summarily denied Ramirez's petition for review. Ramirez's post-conviction counsel did not raise the ineffective assistance of trial counsel claim before us now in the initial petition. Arizona concedes that post-conviction counsel in the initial collateral review proceeding performed deficiently.

In 1997, Ramirez filed a petition for habeas relief with the federal district court. The district court later substituted the Federal Public Defender (FPD) for the previous habeas counsel, "due to concerns regarding the quality of representation." Because of the substitution and its reason, the district court allowed Ramirez to amend his petition. The district court initially allowed Ramirez to add the current ineffective assistance of trial counsel claim, finding it related back to the original petition. But the court ultimately concluded that the claim had been procedurally defaulted by an independent and adequate state bar, and that the procedural

default was not excused.**⁶** *Martinez Ramirez v. Ryan*, No. CV-97-1331-PHX-JAT, 2010 WL 3854792 (D. Ariz. Sept. 28, 2010) (pre-*Martinez* procedural default not excused); *Martinez Ramirez v. Schriro*, No. CV 97-1331-PHX-JAT, 2007 WL 864415, *11 (D. Ariz. March 20, 2007) (order granting leave to amend).

While Ramirez's appeal was pending in this court, the Supreme Court decided *Martinez*, which held: "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. 1at 17.

In light of *Martinez*, we remanded for reconsideration of whether post-conviction counsel's ineffectiveness constituted cause to overcome the procedural default of Ramirez's claim of trial counsel's ineffectiveness. *Ramirez v. Ryan*, 2016 WL 4920284, at *1. The district court ordered supplemental briefing, and Ramirez submitted evidence, including declarations not submitted earlier, to support his request to excuse the procedural default. *Id.* at *4, 8.

The new declarations submitted by Ramirez's family members, who were not contacted by trial counsel, reveal the extent of abuse, poverty, and neglect that Ramirez suffered as

---

**⁶** The current ineffective assistance of counsel claim was initially raised by private pro bono counsel in a successive state habeas petition because the FPD's appointment was for the limited purpose of litigating Ramirez's claim under *Atkins v. Virginia*, 536 U.S. 304 (2002) (categorically prohibiting the execution of persons with an intellectual disability). The current ineffective assistance of trial counsel claim was summarily denied because Arizona law requires that ineffective assistance of counsel be raised at the initial collateral review proceeding.

a child. Ramirez's step-father, three of Ramirez's maternal aunts, an aunt's ex-husband, and two of Ramirez's uncles submitted declarations. The information in these declarations contrasted with the information revealed at sentencing. Several of the new declarations were from family members who had first hand knowledge of the abuse and neglect Ramirez suffered, and several actually lived with or cared for Ramirez. Ramirez lived with his step-father for seven years. Ramirez's maternal aunt, Eloise Arce, and her husband, William Laubner, Jr., cared for Ramirez for over a year.

In contrast, the testimony presented by two of Ramirez's younger sisters during the mitigation hearing relayed no information about Ramirez's early years, although they both testified to Ramirez's good nature. Mary Castillo, who has a learning disability herself, contradicted the report that her mother had a drinking problem early in her life. Cynthia Orozco testified that she and Ramirez were "hardly together" when they were younger and that she did not have many memories before she was nine years old (when Ramirez would have been fifteen). Ramirez's aunt, Erlinda, did testify to red flags, including hearing that Maria drank while pregnant and had "many male friends." However, the testimony of Ramirez's younger sisters seemed to conflict with her account.

In the new declarations, Ramirez's family members stated they would have been willing to testify but were never contacted by trial counsel. The declarations reveal that Ramirez was born to a poor migrant worker family. Family members noted their continual exposure to pesticides in the fields where they worked. His mother, Maria, became pregnant with Ramirez after her brother-in-law raped her. Maria was an alcoholic and drug user who drank during her

pregnancy, and she attempted to abort the fetus by ingesting herbs and jumping off of the counter.

Things did not improve after Ramirez was born. Maria did not nurture or show love to Ramirez, and Ramirez was often "shuttled around," between various family members, even as an infant, because "[n]obody wanted him." Eloise, who cared for Ramirez for over a year when he was an infant, concluded that "no mother/child bond was ever formed between [Ramirez and Maria]." Maria told a family member that she would put beer in Ramirez's bottle "when he was just a few years old." Family members recalled that Ramirez and his siblings went hungry, not eating for days while Maria was out drinking and partying. Ramirez was forced to steal food to feed himself. Maria and her children moved frequently, finding whatever "shack" she could, and the homes were always "filthy," with animal feces on the floor. Ramirez and his siblings would eat on the floor, where they also slept on dirty mattresses.

Family members also recalled seeing Maria physically abuse Ramirez, hitting him with "anything she could get her hands on, including electrical cords and shoes." Family members testified that Maria solicited men for sex in bars and allowed men to have sex with her daughter to support her drug and alcohol habit. Maria had an infant who died from exposure after being left in the house without heat in the winter at night while Maria went out partying; Ramirez was in the house asleep at the time.

In addition to the physical abuse and neglect, family members testified to Ramirez's apparent developmental delays, which included delayed walking, potty training, and speech; not being able to read; and "slow" or odd behavior.

Family members recalled Ramirez could not take care of himself at a basic level: he had poor hygiene, did not know how to comb his hair, and he ate with his hands because he could not use utensils properly.

During post-conviction proceedings, trial counsel also submitted a declaration, acknowledging that Ramirez's trial was her first capital case and that she had no previous capital experience. She also represented Ramirez by herself. In her declaration, she noted she was not prepared to handle "the representation of someone as mentally disturbed as David Ramirez," and she also acknowledged that she "did not fully understand his limitations," which prevented her from "explain[ing] David's situation to him on a level that he could fully comprehend." She noted that "[t]he mitigating information that we did present was very limited," and remarked that had she had the information later presented by Ramirez's family members with first hand knowledge of his childhood, it "would have changed the way I handled both David's guilt phase and his sentencing phase." He also stated she "had no strategic reason for not presenting all the mitigation information available."

Dr. McMahon also submitted a declaration, indicating that he did not receive Ramirez's IQ scores or school reports. According to Dr. McMahon, had he been provided with Ramirez's school records and IQ scores, he "would have insisted on obtaining information about Mr. Ramirez's adaptive behavior." He also stated that he would not have administered the PPVT IQ test, which is not a comprehensive IQ test, but rather "would have given Mr. Ramirez a comprehensive IQ test." In addition, Dr. McMahon would not have concluded that Ramirez was not intellectually disabled, because the scores of 70 and 77 on the "more

comprehensive WISC IQ test[,] . . . would have indicated to me that Mr. Ramirez may be retarded and it would have greatly expanded the nature of the evaluation I did conduct."

Again, the district court determined that Ramirez's claim of ineffective assistance of trial counsel was procedurally barred and denied Ramirez's request for evidentiary development. The district court did not, however, analyze whether Ramirez had demonstrated cause and prejudice under *Martinez*, but instead based its decision on whether Ramirez's underlying ineffective assistance of counsel claim would ultimately succeed on the merits. *Ramirez v. Ryan*, 2016 WL 4920284, at *4. The district court concluded that "Ramirez ha[d] not shown that Siegel's performance at sentencing fell below an objective standard of reasonableness." *Id.* at *9. The district court also found that "[e]ven if [trial counsel's] performance was deficient, Ramirez cannot show prejudice." *Id.* at *11.

The district court issued a certificate of appealability for the procedural default of Ramirez's ineffective assistance of trial claim, concluding that "reasonable jurists could debate the conclusion that [the ineffective assistance of counsel claim] is procedurally barred." *Id.* at *13.

On appeal, Ramirez raises three certified claims: that (1) the procedural bar of his ineffective trial counsel claim is excused under *Martinez*, (2) his due process rights under *Ake* were violated when the trial court denied his request for mental health experts, and (3) the Arizona state courts applied an unconstitutional causal nexus requirement to exclude his mitigation evidence.

II

We review the denial of habeas relief de novo. *Lopez v. Schriro*, 491 F.3d 1029, 1036 (9th Cir. 2007). Ramirez's certified claims are not subject to the deferential review of 28 U.S.C. § 2254(d) because the state court did not address these claims on the merits. *Ramirez v. Schriro*, No. CV 97-1331-PXH-JAT, 2008 WL 5220936, at *14 n.10 (D. Ariz. Dec. 12, 2008); *see* 28 U.S.C. § 2254(d).

A federal court is precluded from reviewing a claim that has been barred by an independent state procedural rule. *Martinez*, 566 U.S. at 9. When a petitioner has procedurally defaulted a claim, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default. *Id.* at 754–55. However, in *Martinez*, the Supreme Court announced a narrow set of circumstances under which a petitioner can establish cause. 566 U.S. at 17. Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused if state law requires that all claims be brought in the initial collateral review proceeding, as Arizona law does, and if in that proceeding there was no counsel or counsel was ineffective. *Id.*

Thus, to establish "cause" under *Martinez*—the first part of establishing "cause and prejudice" to excuse a procedural default—Ramirez must demonstrate that post-conviction counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *Clabourne v. Ryan*, 745 F.3d 362, 377

(9th Cir. 2014), *overruled on other grounds by McKinney*, 813 F.3d at 819. In turn, *Strickland* requires demonstrating "that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Id.* (citation omitted). Determining whether there was a reasonable probability that the result of the post-conviction proceedings would be different "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.*

To establish "prejudice" under *Martinez*'s second prong of the "cause and prejudice" analysis, Ramirez must demonstrate that his underlying ineffective assistance of trial counsel claim is "substantial." *Id.* In *Martinez*, the Supreme Court defined substantial to be a "claim that has some merit," and explained the procedural default of a claim will not be excused if the ineffective assistance of counsel claim "is insubstantial, *i.e.*, it does not have any merit or [ ] it is wholly without factual support." *Martinez*, 566 U.S. at 14–16.

The Supreme Court provided no further definition of substantial, but cited the standard for issuing a certificate of appealability as analogous support for whether a claim is substantial. *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Using the standard for issuing a certificate of appealability, for a claim to be substantial a petitioner must show "that reasonable jurists could debate whether the issue should have been resolved in a different manner or that the claim was adequate to deserve encouragement." *Apelt v. Ryan*, 878 F.3d 800, 828 (9th Cir. 2017) (quotations omitted). "A court should conduct a 'general assessment of the[ ] merits,' but should not decline

to issue a certificate 'merely because it believes the applicant will not demonstrate an entitlement to relief.'" *Cook v. Ryan*, 688 F.3d 598, 610 n.13 (9th Cir. 2012) (alteration in original) (quoting *Miller-El*, 537 U.S. at 336–37)).

The analysis of whether both cause and prejudice are established under *Martinez* will necessarily overlap, "since each considers the strength and validity of the underlying ineffective assistance claim." *Djerf v. Ryan*, No. 08-99027, ___ F.3d ___, 2019 WL 3311147, at \*6 (9th Cir. July 24, 2019). However, the requirements remain distinct. *Clabourne*, 745 F.3d at 377 (a finding of "'prejudice' for purposes of the 'cause and prejudice' analysis which requires only a showing that the trial-level ineffective assistance of counsel claim was 'substantial'—does not diminish the requirement. . . that petitioner satisfy the 'prejudice' prong under *Strickland* in establishing ineffective assistance by post-conviction counsel").

Thus, to establish cause and prejudice in order to excuse the procedural default of his ineffective assistance of trial counsel claim, Ramirez must demonstrate the following: (1) post-conviction counsel performed deficiently; (2) "there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different," *Id.*; and (3) the "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14.

III

Ramirez has demonstrated both cause and prejudice under *Martinez* to excuse the procedural default of his ineffective

assistance of trial counsel claim.  We do not draw a conclusion regarding the ultimate success of his ineffective assistance of trial counsel claim.  Rather, we remand for Ramirez to pursue evidentiary development of that claim in the district court.

Whether post-conviction counsel's performance was deficient turns on the strength and substantiality of Ramirez's trial counsel ineffective assistance of counsel claim. We therefore first address whether Ramirez's underlying ineffective assistance of trial counsel claim is substantial, i.e., whether Ramirez can establish prejudice under *Martinez.* Then we evaluate post-conviction counsel's performance under *Strickland* to determine whether Ramirez has established cause under *Martinez.*

A

The district court erred by conducting a full merits review of Ramirez's underlying ineffective assistance of trial counsel claim on an undeveloped record.  The district court skipped to a conclusion on the merits of the ineffective assistance of trial counsel claim, thereby holding Ramirez to a higher burden than required in the *Martinez* procedural default context.[7]  The district court concluded that "Ramirez has not

---

[7] The district court collapsed what should have been a  two-step process: first, decide whether the procedural default is excused, and if so, then address the claim squarely, after allowing a chance for any necessary record or evidentiary development.  Had the district court found the procedural default excused, even implicitly, then reached the merits of the claim on a properly developed record, this case may have been different. *See Apelt v. Ryan*, 878 F.3d 800, 824 (9th Cir. 2017) (concluding "that the district court implicitly determined that Apelt met the cause and prejudice standard set forth in *Coleman v. Thompson*, and thus could address the

shown that Siegel's performance at sentencing fell below an objective standard of reasonableness." *Ramirez v. Ryan*, 2016 WL 4920284, at \*9. The district court also concluded that "even if Siegel's performance were deficient, Ramirez cannot show prejudice." *Id.* at \*11. Ramirez was not, however, required to demonstrate the ultimate *success* of his underlying ineffective assistance of counsel claim, but rather whether he had established cause and prejudice under *Martinez*.

Indeed, the district court did not address whether the claim was "substantial" at all and failed to evaluate post-conviction counsel's performance under *Strickland* except to refute, in a footnote, Ramirez's contention that the court had already determined that post-conviction counsel performed deficiently. *Id.* at \*3 n.1.

The district court issued a certificate of appealability for the procedural default of Ramirez's ineffective assistance of counsel claim, finding that "reasonable jurists could debate the conclusion that [the ineffective assistance of counsel claim] is procedurally barred." *Id.* at \*13.

B

We now turn to a de novo review of whether Ramirez has demonstrated that his claim of ineffective assistance of trial counsel is substantial, thus constituting "prejudice" under *Martinez*. Ramirez asserts that his claim of ineffective

---

merits of Apelt's IAC claims" (internal citation omitted)). However, the district court explicitly held that the procedural default was not excused based on its conclusion that Ramirez's ineffective assistance of trial counsel claim failed on the merits.

assistance of trial counsel is substantial because trial counsel failed to present evidence of intellectual disability, brain damage, and "the myriad mitigating circumstances in his background." We agree.

1

To conduct a "general assessment of the merits" of Ramirez's underlying ineffective assistance of trial counsel claim, we must examine the *Strickland* standard. *See Cook*, 688 F.3d at 610 & n.13. Under *Strickland*, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness and that the deficiency prejudiced the petitioner. 466 U.S. at 689. An objective standard of reasonableness is measured by the "prevailing professional norms" at the time of representation. *Id.* at 688. The inquiry of counsel's performance under *Strickland* is "highly deferential," the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotations omitted).

The professional norms when Ramirez was sentenced placed an affirmative duty on counsel "to investigate, develop, and present mitigation evidence during penalty phase proceedings." *Summerlin v. Schriro*, 427 F.3d 623, 630 (9th Cir. 2005) (en banc) (discussing prevailing professional norms during the 1980s). During capital penalty proceedings, "[t]he duty to investigate is critically important." *Id.* "Although we must defer to a lawyer's strategic trial choices, those choices must have been made after counsel has conducted reasonable investigations or made a reasonable

decision that makes particular investigations unnecessary." *Id.* (internal quotations and citation omitted).

There is a "belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background or to emotional and mental problems, *may be less culpable than defendants who have no such excuse*." *Boyde v. California*, 494 U.S. 370, 382 (1990) (quotations omitted; emphasis in original). Because of this shared belief, "it is imperative that all relevant mitigating information be unearthed for consideration at the capital sentencing phase." *Summerlin*, 427 F.3d at 630 (alterations and quotations omitted). An investigation should include "inquiries into social background and evidence of family abuse." *Id.* Counsel must also probe for evidence of mental impairment and "examine the defendant's physical health history, particularly for evidence of potential organic brain damage and other disorders." *Id.*

2

We first assess trial counsel's performance under the first prong of *Strickland* to determine whether Ramirez's claim is substantial. Ramirez has presented a substantial claim that trial counsel performed deficiently because she failed to pursue or present evidence that Ramirez was intellectually disabled; failed to provide potentially powerful mitigating evidence to Dr. McMahon; and subsequently relied on Dr. McMahon's report, despite possessing conflicting facts. We recognize that this is not a case where counsel failed to present any mitigating evidence. However, her failure to present or pursue evidence that, if considered, could have made a difference in the outcome of Ramirez's trial, is substantial, particularly given that our review is de novo and

unconstrained by the strictures of 28 U.S.C. § 2254(d). Thus, Ramirez's ineffective assistance of trial counsel claim was at least a substantial one within the meaning of *Martinez*.

For example, trial counsel had evidence demonstrating that Ramirez may have been intellectually disabled. She knew he scored 70 and 77 on IQ scores in school, was three to four grades behind his peers, switched schools ten times before completing seventh grade, and never graduated from high school. *Ramirez v. Ryan*, 2016 WL 4929284, at *5. As she later revealed, her own interactions with Ramirez raised concerns about his intellectual functioning and ability to understand his situation. Trial counsel had no capital experience and had not even observed a capital trial or sentencing. She admitted she was unprepared to represent "someone as mentally disturbed as David Ramirez, especially in a capital case."

Despite possessing these facts, trial counsel failed to investigate further or present a claim of mental impairment, and instead relied on Dr. McMahon's conclusion that Ramirez was "well within the average range of intelligence."

"We have repeatedly held that counsel may render ineffective assistance if he is on notice that his client may be mentally impaired, yet fails to investigate his client's mental condition as a mitigating factor in a penalty phase hearing." *Caro v. Woodford*, 280 F.3d 1247, 1254 (9th Cir. 2002) (quotations omitted). Here, inexplicably, trial counsel did not provide Ramirez's IQ scores or the school records she did have to Dr. McMahon. While it is generally reasonable to rely on an expert opinion, particularly where Ramirez requested the expert, it is not reasonable to fail to provide that expert with the critical information that would inform the

tenor and type of evaluation administered. *Id.* ("[C]ounsel's failure to investigate and provide appropriate experts with the information necessary to evaluate Caro's neurological system for mitigation constituted deficient performance under *Strickland*."). Dr. McMahon's conclusion that Ramirez was "well within the average range of intelligence" could well have been different had he had knowledge of Ramirez's poor school records and attendance, his low IQ scores, his exposure to alcohol, and trial counsel's interactions with Ramirez, as Dr. McMahon's later declaration attests.

Trial counsel provided Dr. McMahon with police reports, plea agreements, notes from an interview, and sentencing orders. The fact that she presented Dr. McMahon with certain information, but failed to provide the records that could lead to potentially powerful mitigating evidence, is unreasonable and supports a substantial claim of deficient performance. *See Clabourne*, 745 F.3d at 383 (concluding that petitioner's counsel was ineffective during capital sentencing based on three grounds, including for "fail[ing] to provide any mental health expert with health records sufficient to develop an accurate psychological profile of [petitioner].").

Trial counsel also possessed facts regarding Ramirez's upbringing that contradicted the conclusions and observations in Dr. McMahon's report. The report concluded that Maria "devot[ed] her time as a traditional Mexican-American mother whose responsibility revolved around the home and her children," and that Maria "was always there" for Ramirez "as he was growing up." As additional mitigating testimony from family members who lived with and cared for Ramirez later revealed, Dr. McMahon's description of Maria's relationship with Ramirez could not be farther from the truth.

Maria physically abused Ramirez, who was repeatedly shuttled around family members' homes because he was not wanted. Ramirez and his siblings were neglected and left alone for days on end, living in "filthy" conditions. They were often hungry. Ramirez witnessed significant violence at home. Ramirez evidenced significant developmental delays and attended school sporadically, not finishing high school.

Despite counsel's affirmative duty to "conduct sufficient investigation and engage in sufficient preparation to be able to present and explain the significance of all the available mitigating evidence," the misleading conclusions and observations in Dr. McMahon's report were left unchallenged and unexplained. *See Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (en banc) (quotations and alterations omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 399 (2000)).

Trial counsel had a duty to investigate and pursue mitigating evidence, especially where "tantalizing indications in the record suggest[ed] that certain mitigating evidence may be available." *Lambright v. Schriro*, 490 F.3d 1103, 1117 (9th Cir. 2007) (quotations omitted). Given trial counsel's knowledge of Ramirez's poor school records and attendance, his low IQ scores, her own interactions with Ramirez, his exposure to alcohol, and the red flags in his family's testimony, trial counsel was under an affirmative "duty to investigate and present mitigating evidence of mental impairment as well as evidence of family abuse." *Id.* at 1117. Ramirez has made out a substantial claim that trial counsel performed deficiently.

3

Given the deficient performance, we next analyze whether Ramirez has demonstrated a substantial claim of prejudice as a result of trial counsel's deficient performance. Under *Strickland*, "[t]o establish 'prejudice,' a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Sexton v. Cozner*, 679 F.3d 1150, 1159–60 (9th Cir. 2012). "To assess that probability, we consider the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." *Porter v. McCollum*, 558 U.S. 30, 41 (2009) (quotations and alterations omitted).

First, we address the effect of counsel's failure to provide Dr. McMahon with Ramirez's IQ scores. Trial counsel's failure to provide accurate and complete records to Dr. McMahon support a substantial claim of prejudice to Ramirez because the failure led to the presentation of an inaccurate and flawed report at sentencing. Although Ramirez was sentenced to death before *Atkins*,[8] as the district

---

[8] The government argues that the determination that Ramirez was not intellectually disabled in the context of his *Atkins* claim hearings is binding here. We disagree. Finding that Ramirez is intellectually disabled and thus cannot be executed under *Atkins* is different than presenting mitigating evidence of an intellectual disability. *See Doe v. Ayers*, 782 F.3d 425, 441 (9th Cir. 2015). ("[A]ll potentially mitigating evidence is relevant at the sentencing phase of a death case, so a troubled childhood and mental problems may help even if they don't rise to a specific, technically-defined level."). Nevertheless, we note that two experts did diagnose Ramirez with an intellectual disability in connection with the *Atkins* claim.

court noted, "in Arizona a 'slow, dull and brain-damaged' mental impairment may have a significant mitigating effect as it may evidence an inability of the defendant to control his conduct." *Martinez Ramirez v. Ryan*, 2010 WL 3854792, at *5. In his declaration, Dr. McMahon remarked that he would not have concluded that Ramirez's score on the PPVT test was "in no way indicative of any form of mental retardation" had he seen Ramirez's school record and IQ scores, as "[t]hese scores would have indicated to me that Mr. Ramirez may be retarded and it would have greatly expanded the nature of the evaluation I did conduct." It also would have changed the type of testing that Dr. McMahon administered. Dr. McMahon indicated in his declaration that he would not have administered the PPVT test, but "would have given Mr. Ramirez a comprehensive IQ test[, because] [t]he PPVT is not a comprehensive IQ test." The IQ tests that resulted in Ramirez's lower scores of 70 and 77 were "the more comprehensive WISC IQ tests."

Second, the mitigating evidence introduced during post-conviction proceedings was not all cumulative. We disagree that the new mitigating evidence "would barely have altered the sentencing profile presented to the sentencing judge." *See Strickland*, 466 U.S. at 699–700. Viewing the record of mitigating evidence available as a whole to the sentencing judge and the record of mitigating evidence available now, we are persuaded that Ramirez's claim of prejudice is not "wholly without factual support." *See Martinez*, 566 U.S. at 16.

The mitigation evidence presented during sentencing did not consistently or accurately describe the circumstances of Ramirez's life. Dr. McMahon's report concluded that Ramirez was "well within the average range of intelligence,"

and indicated Maria was a loving mother who was there for the children and Ramirez as he was growing up. During the mitigation hearing, Ramirez's family members generally testified about Ramirez's good qualities. The testimony of Ramirez's younger sisters was largely unhelpful: Cynthia did not live with Ramirez for much of their childhood and could not recall any details of their childhood. Mary testified to a relatively normal childhood, although it was later revealed that Mary herself faced intellectual challenges.

Overall, the picture of mitigation presented at sentencing is relatively innocuous compared to the details that later emerged about Ramirez's life. The sentencing memorandum used by trial counsel highlighted and discussed Ramirez's criminal history, school attendance, substance abuse, and ability to adapt in prison. Had the sentencing memorandum instead highlighted that Ramirez's childhood was "filled with abuse and privation, or the reality that he was 'borderline mentally retarded,'" there is "a reasonable probability that the result of the sentencing proceeding would have been different if competent counsel had presented and explained the significance of all the available evidence." *See Williams*, 529 U.S. at 398–99 (quotations omitted). The judge did find several mitigating factors, and only three aggravating factors. Had the evidence of a mental impairment been introduced, as well as the evidence of the level of abuse Ramirez suffered, there is a substantial claim that the judge "would have struck a different balance." *See Porter*, 558 U.S. at 42 (quotations omitted).

The mitigating evidence Ramirez has presented is not too speculative, irrelevant, or weak to disregard. *Cf. Schriro v. Landrigan*, 550 U.S. 465, 481 (2007). Neither is it a situation where the petitioner is pointing to some unknown and yet to

be discovered mitigating evidence. *Djerf*, 2019 WL 3311147, at *7 ("Djerf has failed to identify any evidence related to his childhood that counsel should have, but did not, uncover."). Here, two psychologists diagnosed Ramirez as intellectually disabled, with one finding evidence of brain dysfunction. Subsequent declarations revealed the extent of the physical abuse and extreme neglect that Ramirez suffered, corroborated by multiple family members who were not contacted by trial counsel.

In sum, Ramirez has established a substantial claim that he was prejudiced by trial counsel's deficient performance under *Strickland*. Based on the foregoing, and without Ramirez receiving the benefit of full evidentiary development, we cannot conclude that Ramirez's ineffective assistance of trial counsel claim overall "is insubstantial, *i.e.*, it does not have any merit or [ ] it is wholly without factual support." *Martinez*, 566 U.S. at 16. Therefore, Ramirez has established prejudice under *Martinez*.

C

We now turn to whether Ramirez has established cause under *Martinez*. We conclude that he has. The government concedes that post-conviction counsel's performance was constitutionally deficient, but argues that because trial counsel's performance was not deficient, post-conviction counsel's "failure to raise a successful ineffective assistance of trial counsel claim was not prejudicial." ("[T]here is little question that his performance was constitutionally deficient under *Strickland*.").

As the foregoing discussion indicates, we conclude that Ramirez's ineffective assistance of trial counsel claim is

"substantial." The underlying ineffective assistance of counsel claim is strong enough to support a conclusion that, had post-conviction counsel performed effectively and raised the claim, "there [is] a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *See Clabourne*, 745 F.3d at 377.

The district court clearly saw problems with post-conviction counsel's performance and potential prejudice as a result. Although the district court did not conclude that post-conviction counsel was deficient under *Strickland*, the court made the following observations while assessing post-conviction counsel's performance in a pre-*Martinez* context:

> Based on the sentencing record, [post-conviction relief ("PCR")] counsel was on notice that Petitioner had two IQ tests documenting low intelligence and another test demonstrating he was behind his peers in educational development. PCR counsel was also on notice that the presentence report indicated that Petitioner displayed low intelligence and emotional immaturity. Even though Dr. McMahon reported that Petitioner was not mentally retarded, PCR counsel was still on notice of the contrast between Dr. McMahon's report and the low IQ scores being reported, as well as the mental health deficiencies counsel presented as mitigation at sentencing. PCR counsel was also on notice of his need to investigate mental health because in Arizona a "slow, dull and brain-damaged" mental impairment may have a significant

> mitigating effect as it may evidence an
> inability of the defendant to control his
> conduct.

*Martinez Ramirez v. Ryan*, 2010 WL 3854792, at \*5 (internal citations omitted).

Post-conviction counsel possessed evidence that indicated that Ramirez could have an intellectual disability, and knew that trial counsel failed to present or pursue evidence of an intellectual disability. Had post-conviction counsel performed effectively, by reviewing the record, trial counsel's failure to present evidence of Ramirez's intellectual disability would have readily revealed itself. Also, had post-conviction counsel conducted a reasonable investigation into Ramirez's upbringing, taking into account the "red flags" raised at the penalty phase hearing, the record of physical abuse and neglect Ramirez suffered as a child could have been presented in support of the ineffective assistance of trial counsel claim. Had post-conviction counsel raised the substantial claim of ineffective assistance of trial counsel, for failure to pursue and present mitigating evidence of an intellectual disability, there is a reasonable probability that the result of the post-conviction proceedings would have been different. We therefore conclude that Ramirez has established cause under *Martinez*.

## D

Finally, the district court erred in denying Ramirez evidentiary development of his ineffective assistance of counsel claim. Ramirez asserts he should have been given the opportunity to present testimony from mental health experts, sentencing counsel, prior investigators, a capital

mitigation expert, and lay witnesses in order to prove his ineffective assistance of counsel claim. We agree. *Martinez*, 566 U.S. at 13 ("Ineffective-assistance claims often depend on evidence outside the trial record."). Because we now hold that Ramirez has established both cause and prejudice to excuse the procedural default of his claim, he no longer requires evidentiary development to support establishing cause and prejudice under *Martinez*. However, he is entitled to evidentiary development to litigate the merits of his ineffective assistance of trial counsel claim, as he was precluded from such development because of his post-conviction counsel's ineffective representation. *See Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013) (en banc).

IV

The district court correctly concluded that Ramirez's rights under *Ake v. Oklahoma* were not violated. 470 U.S. 68 (1985). Ramirez asserts that because the record demonstrated that his mental health would be an issue during sentencing, due process required the appointment of a mental health expert.[9] Ramirez also asserts that the district court's interpretation of *Ake* was erroneous and that the trial court forced Ramirez to waive self-representation to obtain a mental health expert.

Under *Ake*, a defendant is entitled to an independent psychological examination to assist in his defense during "a capital sentencing proceeding, when the State presents psychiatric evidence of the defendant's future

---

[9] Ramirez argued in the district court that he was denied mental health experts during the guilt phase of his proceeding; however, he does not pursue that claim on appeal.

dangerousness." 470 U.S. at 83. Under our precedent, the right to a mental health expert is not limited to when the state presents evidence of future dangerousness. *Williams* v. *Ryan*, 623 F.3d 1258, 1268–69 (9th Cir. 2010) ("[O]ther circuits have interpreted *Ake* to require a state to provide a defendant expert psychiatric assistance at sentencing only where the state also planned to rely on psychiatric testimony. Yet, we have never read *Ake* so narrowly."). Indeed, "[w]here the mental health of an accused person is genuinely in issue, due process requires the opportunity to have an independent mental health expert to assist the defense." *Williams v. Stewart*, 441 F.3d 1030, 1049 (9th Cir. 2006).

The district court rejected Ramirez's *Ake* claim, noting that *Ake* does not require the appointment of a mitigation specialist. Further, the district court found that even under a broad reading of *Ake*, according to the district court, Ramirez had not made a showing that his mental health would be a significant issue in sentencing. Finally, the district court noted that the trial court did appoint a psychologist, Dr. McMahon, whose report Ramirez and the trial court relied on to find a statutory mitigating circumstance. *Ramirez v. Schriro*, 2008 WL 5220936, at *16.

The district court correctly rejected Ramirez's *Ake* claim. Due process under *Ake* does not require the appointment of a mitigation specialist, so we assess whether Ramirez was denied access to an independent psychological evaluation. We agree with the district court that even under a broad reading of *Ake*, Ramirez's claim fails because he *did* receive the assistance of an independent psychologist. Similarly, despite the court's initial incredulity at appointing a psychologist and a mitigation specialist, it ultimately

appointed several experts, so there was no impermissible waiver of self-representation.[10]

Ramirez asserts that the "subsequent appointment of a neutral psychologist is irrelevant." We disagree. To the extent Ramirez is relying on *Smith v. McCormick*, that case is easily distinguishable. 914 F.2d 1153 (9th Cir. 1990). In *Smith*, due process was violated because the court ordered a psychiatrist to report directly to the court, so the psychiatrist never met with Smith's counsel and "in no sense assisted in the evaluation or preparation of the defense." *Id.* at 1157–58.

Here, the trial court appointed Dr. McMahon, a psychologist suggested by Ramirez. Although the court appointed Dr. McMahon on its own motion and to help the court make a decision, ultimately Ramirez, not the state or the court, relied on Dr. McMahon's report. Ramirez did not request the appointment of an additional psychologist to rebut anything in Dr. McMahon's report. Additionally, the trial court relied on Dr. McMahon's report to find one statutory mitigating factor: that Ramirez lacked the "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." Ramirez's due process rights under *Ake* were not violated.

V

Although we sua sponte expanded the certificate of appealability to include the issue of whether the Arizona state courts improperly excluded Ramirez's mitigating evidence

---

[10] In addition, the trial judge who expressed incredulity over Ramirez's pre-trial requests for experts did not preside over Ramirez's sentencing because the case was transferred before trial.

because it was not causally connected to his crime in violation of *McKinney*, we conclude that the Arizona courts did not unconstitutionally apply a causal nexus requirement to Ramirez's mitigating evidence.

Under *Lockett v. Ohio*, during capital sentencing, the sentencing judge should "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. 586, 604 (1978). In *McKinney*, 813 F.3d at 816, 819, we held that the Arizona Supreme Court was improperly excluding nonstatutory mitigating evidence as a matter of law, requiring defendants to prove a causal connection between the mitigating evidence and the commission of the crime, during its review of death sentences in violation of *Lockett* and *Eddings v. Oklahoma*, 455 U.S. 104 (1982).

This unconstitutional causal nexus requirement was articulated by the Arizona Supreme Court in capital cases from the late 1980s until 2005. *See State v. Anderson*, 111 P.3d 369, 391 (Ariz. 2005) (holding that mitigating evidence in a capital case cannot be rejected because it lacks a causal nexus to the crime); *see also McKinney*, 813 F.3d at 809. During that time period, the Arizona Supreme Court case law "forbade as a matter of law giving weight to [nonstatutory] mitigating evidence, such as family background or mental condition, unless the background or mental condition was causally connected to the crime." Two specific cases that enunciated these rules were *State v. Wallace*, 773 P.2d 983 (Ariz. 1989) and *State v. Ross*, 886 P.2d 1354 (Ariz. 1994). *Id.* at 802.

In *McKinney*, defendant's proffered mitigating evidence was explicitly rejected by both the Arizona trial court and the Arizona Supreme Court: "A difficult family background, including childhood abuse, does not necessarily have substantial mitigating weight absent a showing that it significantly affected or impacted the defendant's ability to perceive, comprehend, or control his actions." *State v. McKinney*, 917 P.2d 1214, 1227 (Ariz. 1996). The Arizona Supreme Court cited *Ross*, 886 P.2d at 1363, to support its disregard of the mitigating evidence. *Id.*

In *Apelt*, we identified the critical factors that indicated whether the Arizona courts during the pertinent time period did not apply the unconstitutional causal nexus requirement by disregarding mitigating evidence otherwise generally used during that period. 878 F.3d at 839–40. In *Apelt*, we noted the following factors: (1) the trial court did not state a factual conclusion regarding a causal nexus between the mitigation evidence and the defendant's conduct; (2) the Arizona Supreme Court did not state a factual conclusion that any proffered mitigation would have "influenced [the defendant] not to commit the crime;" and (3) the Arizona Supreme Court did not cite either *Ross* or *Wallace* when reviewing the mitigating evidence. *Id.*

Though the Arizona Supreme Court reviewed Ramirez's convictions in 1994, during the period that the Arizona Supreme Court was applying a causal nexus requirement, the record here indicates that mitigating evidence was not rejected as a matter of law. In fact, the record compels the opposite conclusion. Importantly, the trial court found non-statutory mitigating factors including: "his unstable family background," "his poor educational experience," "that he was a victim of sexual abuse while he was young," "his chronic

substance abuse," "his psychological history," and "his love of family." At a hearing before Ramirez was sentenced, the judge stated, "I have difficulty placing substantial significance on the lifestyle that this Defendant experienced, *although I, obviously, am giving it some weight*."

The Arizona Supreme Court affirmed all of the mitigating circumstances found by the trial court, and neither of the state courts excluded any mitigating evidence because it was not causally connected to the crime. Ramirez argues that had the judge truly considered the mitigating factors, he would not have been sentenced to death. What the trial court would have decided had it considered all the mitigating evidence actually presented at trial–as opposed to the evidence that could have been presented had trial counsel not been ineffective–is not at all self-evident; it is certainly not proof that, despite express attestation to the contrary, no weight was given to the mitigating evidence in question.

Here, as in *Apelt*, there is no statement from either state court that indicates that the state courts refused to consider mitigating evidence as a matter of law because it was unrelated to the crime. Additionally, the sentencing judge expressly indicated that he *would* give some weight to the relevant mitigating factors. Further, neither of the state courts cited to *Ross* or *Wallace* in reviewing Ramirez's mitigating evidence. We are not prepared to find error where the Arizona courts did not articulate an unconstitutional causal nexus test to mitigating evidence, did not cite *Ross* or *Wallace*, found several non-statutory mitigating factors, and stated that the non-statutory factors would be given some weight.

## VI

In sum, we reverse the judgment of district court as to the procedural default of the ineffective assistance of counsel claim, and remand for an evidentiary hearing on that issue. We affirm the district court's denial of Ramirez's *Ake* claim and reject Ramirez's *McKinney* claim. We do not reach the remaining uncertified issues.[11]  *See* 28 U.S.C. § 2253(c)(2).

**AFFIRMED in part, REVERSED in part, and REMANDED.**

BERZON, Circuit Judge, dissenting in part:

I concur in the opinion except in one respect: I would grant a certificate of appealability with regard to Ramirez's claim under *Atkins v. Virginia*, 536 U.S. 304 (2002) (prohibiting the execution of intellectually disabled persons), *see* Opinion at 40 n.11, hold that the claim does relate back to Ramirez's ineffective assistance of counsel claim, and remand to the district court for further proceedings.

We may grant a certificate of appealability if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner makes this substantial showing "by demonstrating that jurists

---

[11] One of these uncertified issues that we decline to address is Ramirez's claim under *Atkins v. Virginia*, 536 U.S. 304. Ramirez is, of course, not precluded from asserting an independent *Atkins* claim when an execution date is set based on his alleged intellectual disability at that time.

of reason could disagree with the district court's resolution of his constitutional claims." *Cain v. Chappell*, 870 F.3d 1003, 1015 (9th Cir. 2017). But the district court did not consider the merits of Ramirez's *Atkins* constitutional claim because it concluded that the claim was not timely filed and did not relate back to a timely filed habeas claim under Federal Rule of Civil Procedure 15. In this circumstance, our inquiry has two parts:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying this standard, a certificate of appealability should issue on the relation back issue.

First, jurists of reason would find it debatable whether Ramirez has a valid claim under *Atkins*. Ramirez is likely not entitled to relief under 28 U.S.C. § 2254(d)(1), as the state court decision is probably not contrary to federal law clearly established at the time. *See Shoop v. Hill*, 139 S. Ct. 504 (2019). But Ramirez could possibly prevail on his claim under section 2254(d)(2) that the state court unreasonably determined the facts in concluding that Ramirez was not intellectually disabled. *Cf. Brumsfeld v. Cain*, 135 S. Ct.

2269, 2278 (2015) (concluding that under section 2254(d)(2) the state court unreasonably determined the facts regarding petitioner's *Atkins* claim).

Ramirez contends that the state court unreasonably determined the facts by, *inter alia*, relying on certain experts it acknowledged did not have the requisite credentials and did not administer the proper tests; refusing to take the Flynn effect[1] into account; and refusing to follow *community* intelligence standards by placing significant weight on Ramirez's adaptive strengths while in prison rather than outside a structured environment. Ramirez has raised a colorable argument that, by failing to follow the established science on intellectual disability, the state court unreasonably determined that he was not intellectually disabled.

Second, I believe it more than debatable that the district court erred in its procedural ruling, and that Ramirez's *Atkins* claim *does* relate back to his timely filed ineffective assistance of counsel claim. A claim relates back under Rule 15(c) if there is "a common core of operative facts uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005). A claim will not relate back "when the new claims depend upon events separate in 'both time and type'" from the original relief requested. *Id.* at 657. This "time and type" language "refers not to the claims, or grounds for relief. Rather, it refers to *the facts that support those grounds*." *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013)

---

[1] "The basic premise of the Flynn effect is that because average IQ scores increase over time, a person who takes an IQ test that has not recently been normed against a representative sample of the population will receive an artificially inflated IQ score." *Smith*, 813 F.3d at 1184.

*abrogated on other grounds by Davila v. Davis*, 137 S. Ct. 2058 (2017).

The *Atkins* claim and the ineffective assistance of trial counsel claim we are remanding for consideration on the merits share a "common core of operative facts" similar in "time and type." *See Mayle*, 545 U.S. 657, 59. The core of Ramirez's ineffective assistance claim is the failure of his attorney and the psychological expert to investigate and appreciate the facts indicating the severity of Ramirez's mental impairments, principally his intellectual disability. Litigating the ineffective assistance of trial counsel claim on its merits requires presenting the evidence trial counsel should have introduced regarding Ramirez's mental disability. Ramirez's *Atkins* claim depends on the same facts—what a properly developed record shows concerning Ramirez's cognitive abilities and adaptive behavior.

The district court held that "[w]hile proof that Petitioner is mentally retarded could have been offered as mitigation at sentencing and, therefore, is reasonably part of his IAC-at-sentencing claim, the *Atkins* claim is not based on attorney error." This difference indicates that the two are different *types of claims*. But as *Ha Van Nyguen* clarified, that is not the relevant inquiry under *Mayle*. *See* 736 F.3d at 1297. (The district court's decision in 2008 was made without the benefit of *Ha Van Nyguen*, a decision published in 2013.) "*[F]acts that support those grounds*" for relief in each claim—Ramirez's actual intellectual disability—*are* similar—indeed, largely identical—in time and type. *See id*.

Respondents rely on *Schneider v. McDaniel*, 674 F.3d 1144 (9th Cir. 2012), to argue that Ramirez's *Atkins* claim does not relate back. *Schneider* is inapposite. In *Schneider*,

the petitioner argued that his new ineffective assistance of counsel claim related back to a previous, different ineffective assistance claim because of the common fact of counsel's ineffectiveness. *Id.* at 1151. The substantive part of the two claims—that is, what counsel did not do and so was ineffective—was entirely different. *See id.* It was this kind of partial overlap that *Schneider* rejected, because it "would stand the Supreme Court's decision in *Mayle* on its head." *Id.* Here, in contrast, the new claim that relates back is a merits claim, not one of ineffective assistance of counsel. As to that merits claim, the overlap with the merits aspect of the Ramirez's ineffective assistance of counsel claim is near complete.

This case is also distinct from one arguing that an ineffective assistance of counsel claim relates back to a connected merits claim. In *United States v. Ciampi*, 419 F.3d 20 (1st Cir.2005), for example, petitioner's ineffective assistance of counsel claim was based on his counsel's failure to inform petitioner of his rights before the plea. *Ciampi* held that ineffective assistance claim did not relate back to his initial petition alleging a due process violation based on the *court's* failure to advise the petitioner of the same consequences. *Id.* at 24. As the facts of *Ciampi* illustrate, ineffective assistance claims often incorporate both facts contained in the trial record and supplemental facts regarding the actions (and inactions) of counsel. An ineffective assistance claim will factually overlap in some respects with a related merits claim, but, as in *Ciampi*, critical facts outside the trial record may not overlap. If those supplemental facts are core operative facts of an ineffective assistance claim, the claim may not relate back to the underlying merits claim. I note that some ineffective assistance claims *do* relate back to the incorporated merits issue. *Ha Van Nyguen*, 736 F.3d at

1297, so held, concluding that an ineffective assistance of appellate counsel claim for failing to raise a double jeopardy claim *did* relate back because it shared a common core of facts with petitioner's timely filed cruel and unusual punishment claim.

What we have here is the reverse situation from *Nyguen*: the ineffective assistance of trial counsel claim required establishing what an effective trial counsel would have done regarding the underlying claim—here the penalty phase mitigation presentation as it related to Ramirez's mental disability—and whether it was likely to have succeeded; the merits claim that is sought to be added to the habeas petition—the *Atkins* claim—concerns the same issue— Ramirez's mental disability. In that circumstance, the relevant core facts of the merits claim are *necessarily* incorporated in the ineffective assistance claim, so relation back is appropriate. That is the scenario currently before us.

The central concern of the relation back doctrine as applied in *Mayle* and *Nyguen* is whether the newly articulated claim will require substantial additional factual development. Now that the merits portions of the ineffective assistance of trial counsel claim concerning the failure to present available evidence of Ramirez's mental disability at the penalty phase is going forward, the *Aktins* claim will not require substantially different factual development. Both claims turn essentially on whether Ramirez was intellectually disabled at the time of trial, and if so, to what degree. The district court on remand already must allow evidentiary development regarding the merits of Ramirez's ineffective assistance of trial counsel claim with regard to penalty phase mitigating evidence for purposes of determining whether trial counsel was ineffective. In all likelihood, the evidence presented to

show what trial counsel should have presented but did not will include the very same expert evidence introduced in state court in support of the *Atkins* claim.

In sum, Ramirez has shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" under *Atkins*. *See Slack*, 529 U.S. at 484. Because jurists of reason would also disagree with the district court's relation back holding, Ramirez is entitled to a certificate of appealability on his *Atkins* claim. *See id.*

Once a certificate of appealability is granted, we review the district court's denial of Ramirez's proposed amendment for abuse of discretion. *Hebner v. McGrath*, 543 F.3d 1133, 1136 (9th Cir. 2008). Because the *Atkins* claim does share a "common core of operative facts" with his ineffective assistance claim as discussed above, and because the district court misapplied the "time and type" language in *Mayle*, *see Ha Van Nguyen*, 736 F.3d at 1297, I would conclude that Ramirez's *Atkins* claim does relate back to the timely filed habeas petition, and that the district court abused its discretion in holding otherwise.